**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: July 29, 2005**

J. Vincent Aug, Jr.
United States Bankruptcy Judge

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **EAGLEPICHER HOLDINGS, INC.,** *et al.,* | ) | **Jointly Administered** |
| | ) | **Case No. 05-12601** |
| Debtors. | ) | **Judge J. Vincent Aug** |

**SECOND INTERIM FINANCING ORDER UNDER 11 U.S.C. §§ 105(a), 361 362, 363 AND 364, FEDERAL BANKRUPTCY RULES 2002, 4001, 6004 AND 9014 AND LOCAL BANKRUPTCY RULES 4001-2 AND 4001-3: (I) APPROVING DEBTORS PURCHASE OF ACCOUNTS RECEIVABLE OF EAGLEPICHER FUNDING CORPORATION; (II) AUTHORIZING THE DEBTORS TO (A) OBTAIN SECURED POST-PETITION FINANCING; AND (B) USE CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

THIS MATTER came on for hearing on July 26, 2005 at 10:00 a.m. (the *"Second Interim Hearing"*). EaglePicher Holdings, Inc. (*"Holdings"*), EaglePicher Incorporated (*"EPI"*) and the other Debtor  Originators (as defined below) as listed on *Schedule 1* hereto (the *"Subsidiary Guarantors"*), as debtors and debtors-in-possession (collectively, with Holdings and EPI, the

*"Debtors")* in the above-captioned Chapter 11 cases (the *"Chapter 11 Cases")*, which filed voluntary petitions for reorganization pursuant to Chapter 11 of Title 11, United States Code (the *"Bankruptcy Code")*, on April 11, 2005 (the *"Petition Date")*, have applied to this Court (the *"Motion")* for an order (*"Order"* or *"Second Interim Order")*:

1)       approving the repurchase, pursuant to Bankruptcy Code § 363(b), by those Debtors that are originators of accounts receivable (the "*Debtor-Originators*"), as set forth in *Schedule 1* hereto, of all of the accounts receivable they previously sold to EaglePicher Funding Corporation (*"EP Funding"* or the *"Receivables Subsidiary")*) and the consummation of certain other related transactions pursuant to the terms and conditions of the Receivables Purchase and Reassignment Agreement dated as of the Petition Date (*"RPRA")*) substantially in the form of that annexed as Exhibit "D" to the Motion (with all ancillary documents referred to therein and/or required to be executed in connection therewith, the *"Receivables Repurchase Documents")*;

2)       authorizing, pursuant to Bankruptcy Code §§ 364(c) and (d), the Debtors, in the capacity of either borrower or guarantor, to obtain debtor-in-possession financing from the DIP Lenders (as hereinafter defined) pursuant to the terms and conditions of (a) the Post-Petition Credit Agreement, substantially in the form of that annexed as Exhibit "F" to the Motion (as amended, the *"Post-Petition Credit Agreement,"*[1] together with all ancillary documents referred to therein and/or required to be executed in connection therewith, the *"DIP Financing Documents"* ) by and among the Debtors, Harris N.A., successor by merger to Harris Trust and Savings Bank and such other financial institutions named therein or which hereafter become a

---

[1]       The post-petition credit agreement has been amended by (i) the First Amendment to Post-Petition Credit Agreement dated as of May 6, 2005, (ii) the Second Amendment to Post-Petition Credit Agreement dated May 24, 2005, (iii) the Third Amendment to Post-Petition Credit Agreement dated June 24, 2005, and (iv) the Fourth Amendment to Post-Petition Credit Agreement.

party thereto (collectively, the *"DIP Lenders"*) and Harris N.A., successor by merger to Harris Trust and Savings Bank as collateral agent and administrative agent for the DIP Lenders (in such capacity, the *"DIP Agent"*), (b) the budget annexed as *Exhibit A* hereto, which may be amended with the consent of the DIP Agent (the *"Budget"*) and (c) this Second Interim Order (collectively, the *"DIP Credit Facility"*);

3)      granting the Pre-Petition Lenders (as hereinafter defined), as adequate protection against the diminution in the value or amount of the pre-petition collateral pledged by the Debtors as security for their obligations to the Pre-Petition Lenders, Replacement Liens (as hereinafter defined) and a super-priority administrative expense claim under Bankruptcy Code §507(b), subject to the liens, security interests and super-priority treatment granted the DIP Lenders; and

4)      granting General Electric Capital Corporation (individually and in its separate roles as Purchaser, Administrative Agent, Collateral Agent and Indemnified Person under the Receivables Purchase and Servicing Agreement dated as of January 8, 2002 (the *"RPSA"*) and its officers, directors, employees, attorneys, agents and representatives (collectively *"GECC"*) a super-priority administrative claim, pursuant to Section 507(b) of the Bankruptcy Code, pari passu with the Pre- Petition Lenders' super-priority administrative claim, in the amount of GECC's contingent indemnification claims against Receivables Subsidiary and the Debtor-Originators in exchange for agreeing to the termination of Receivables Subsidiary Securitization Documents (as defined in the Motion) (which, as set forth in the Motion, is an essential condition to the debtor-in-possession financing to be provided by the DIP Lenders); and

5)      granting any further and related relief as the Court deems just and equitable.

A hearing with respect to the Motion was held (the *"Interim Hearing"*) and, on April 11, 2005, an interim order was entered (the *"Interim Order"*) granting on an interim basis, the relief

sought in the Motion.  The Interim Order was subsequently extended by stipulated orders dated May 25, 2005 and June 22, 2005, respectively.  The Court has (i) completed a Second Interim Hearing on the Motion, (ii) considered the Objections, if any, filed with respect to the Motion, the arguments of counsel, the record before it and all relevant matters related thereto, and (iii) been fully advised in the premises.

Upon the record of the Chapter 11 Cases and the record of the Second Interim Hearing, good and sufficient cause appearing therefor, and it appearing to be in the best interests of the Debtors' estates and creditors;

AND THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      On the Petition Date, each of the Debtors filed voluntary petitions under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio, Western Division (the *"Bankruptcy Court"*).  Each Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.      Consideration of this Motion constitutes a *"core proceeding"* as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.      Sufficient and adequate notice of this Second Interim Order has been provided to the Noticed Parties (defined below) by the DIP Lenders and the Pre-Petition Lenders, pursuant to Bankruptcy Rules 2002, 4001(c) and (d) and 9014 and Section 102(1) of the Bankruptcy Code, as required by Sections 363(b) and 364(c) and 364(d) of the Bankruptcy Code, and no further notice of the Motion or this Second Interim Order is necessary or required.

D.    The DIP Lenders are willing to advance monies to the Debtors, and the Pre-Petition Agent is willing to consent to the use of Cash Collateral (as defined below) only upon the conditions contained in this Second Interim Order.

E.    GECC has been paid in full of all amounts owing to GECC with respect to the RPSA (the *"GECC Repurchase Price"*).    The Debtors have affirmed the contingent indemnification obligations of the Debtor-Originators owed to GECC under Article XII of the RPSA and Article V of the Receivables Sale Agreement dated January 8, 2002 ("RSA") (such contingent indemnification obligations, whether incurred before or after the Petition Date, collectively, the *"Indemnification Obligations"*).    The Debtors have affirmed their obligations to pay all fees, costs and expenses (including, without limitation, fees, costs and expenses of counsel and other advisors), owed to GECC under Section 14.04 the RPSA and Section 8.14 of the RSA (such obligations, whether incurred before or after the Petition Date, collectively, the *"Expense Reaffirmation"*).    GECC has consented to the transactions contemplated in the Receivables Repurchase Documents and this Second Interim Order.

F.    The transactions contemplated in the RPRA (the *"Receivables Purchase"*) have been consummated and, all cash held and thereafter that shall be held in the following accounts: (i) Account No. 4000627434, (ii) Account No. 4003110537, (iii) Account No. 4003110553, (iv) Account No. 4003110545, and (v) Account No. 4003110588 and any account used for collection of Receivables (as defined in the Pre-Petition Credit Agreement) (collectively, the "*Collection Accounts*"), maintained at PNC Bank, N.A. ("*PNC Bank*") in the name of Receivables Subsidiary is and shall be property of the Debtors' estates within the meaning of Section 541 of the Bankruptcy Code.

G.     The Debtors are unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense necessary to maintain and conduct their businesses.

H.     The Debtors are unable to obtain the necessary financing: (i) as unsecured credit allowable under Sections 364(a), (b) or (c)(1) of the Bankruptcy Code;  or (ii) as secured credit pursuant only to Sections 364(c)(2) and (3) and (d) on more favorable terms than those offered by DIP Lenders or provided in this Second Interim Order.

I.     The credit and financial accommodations to be extended under the DIP Credit Facility are being extended by the DIP Lenders in good faith; and the conditions required by the Pre-Petition Lenders in connection with the Adequate Protection Claim (as hereinafter defined) and the conditions required by GECC in connection with the Receivables Purchase, including the use of Cash Collateral, are made in good faith; and the DIP Lenders and the Pre-Petition Lenders are entitled to the protection of Bankruptcy Code § 364(e) and GECC is entitled to the protection of Bankruptcy Code § 507(b).

J.     It is in the best interests of the Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein.

K.     Notice of the relief sought by the Motion, and the Second Interim Hearing with respect thereto, pursuant to Bankruptcy Rules 2002, 4001(c) and 6004, Local Bankruptcy Rules 4001-2 and 4001-3 and Bankruptcy Code § 102(1), as required by Bankruptcy Code §§363(b), 364(c) and (d), has been given to the following parties in interest: the U.S. Trustee, the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders and their respective counsel, the Internal Revenue Service, Wells Fargo Bank, National Association as Indenture Trustee for Holdings' 9-3/4% Senior Notes, GECC, counsel for the Committee of Unsecured

Creditors (the *"Creditors Committee"* or the *"Committee"*); and any other parties that have properly requested notice under Bankruptcy Rule 2002 (*"Noticed Parties"*).

L.    An Interim Hearing having been held, the Court entered the Interim Order under 11 U.S.C. §§ 105(a), 361 362, 363 and 364, Federal Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Bankruptcy Rules 4001-2 and 4001-3: (i) authorizing Debtors to (a) purchase accounts receivable of EaglePicher Funding Corporation; (b) obtain secured post-petition financing; and (c) use cash collateral; (ii) granting adequate protection; (iii) modifying the automatic stay; and (iv) setting final hearing; and (v) granting related relief.

M.    Without prejudice to the rights of any party (but subject to the limitations with respect to such rights contained in paragraph 15 of this Second Interim Order), the Debtors admit that as of the Petition Date, under that certain Credit Agreement dated as of August 7, 2003 as amended and restated (the *"Pre-Petition Credit Agreement"*) among Holdings, EPI, the lenders parties thereto (the *"Pre-Petition Lenders"*), and Harris N.A. successor by merger to Harris Trust and Savings Bank, as Administrative Agent (the *"Pre- Petition Agent"*) (the Pre-Petition Credit Agreement and the other documents and instruments (including those evidencing the Pre-Petition Lenders' liens and security interests) executed and delivered in connection therewith being referred to as the *"Pre-Petition Loan Documents"*): (1) the Company was indebted to the Pre-Petition Lenders in the aggregate amount of not less than $251,300,000, plus accrued interest, costs, expenses and other charges thereon, including without limitation, all attorneys fees and legal expenses of the Pre-Petition Lenders, in respect of loans, advances and other financial accommodations (including but not limited to Letters of Credit) made by the Pre-Petition Lenders to the Debtors in accordance with the Pre-Petition Loan Documents (collectively, the *"Pre-Petition Obligations"*), and the Pre-Petition Lenders assert that the Pre-Petition Obligations are without claim, defense, counterclaim, recoupment or offset of any kind;

- 6 -

(2) the Pre-Petition Lenders assert that the Pre-Petition Obligations are secured by valid, binding enforceable and properly perfected first priority liens and mortgages on and security interests in all of the Collateral as defined in the Pre-Petition Loan Documents existing as of the time immediately prior to the filing of the petitions for relief herein and the post-petition proceeds and products thereof (the *"Pre-Petition Collateral"*); and (3) on information and belief, the going concern value of the Pre-Petition Collateral exceeded the amount of the Pre-Petition Obligations on the Petition Date.

N.      The Debtors represent as follows:

i.      that without the financing proposed by the Motion, the Debtors will not have the funds necessary to pay post-petition payroll, payroll taxes, trade vendors, suppliers, overhead and other expenses necessary for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and properties. The Debtors have requested that, pursuant to the DIP Financing Documents and this Second Interim Order, the DIP Lenders make loans and advances and provide other financial accommodations to the Debtors to be used by the Debtors solely for the purposes set forth on the Budget, *Exhibit A*, hereto; provided however, that the loans are also to be used to fund (i) the purchase in full, from GECC, of the SPV Reconveyed Property in connection with the Receivables Purchase, (ii) the Indemnification Obligations (which indemnification obligations, by their terms, expressly survive termination of the RPSA and are herein re-affirmed by the Debtors) and (iii) the expenses re-affirmed pursuant to the Expense Reaffirmation (which obligations, by their terms, expressly survive termination of the RPSA and are herein re-affirmed by the Debtors), whether incurred before or after the Petition Date. The ability of the Debtors to continue their businesses and reorganize under Chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing. The DIP Lenders are willing to make such loans and advances and provide such other financial

accommodations on a secured basis, as more particularly described herein, pursuant to the terms and conditions of the DIP Financing Documents and in accordance with this Interim Order. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets and properties, and is in the best interests of the Debtors, their estates and creditors;

ii.      they are unable to obtain unsecured credit (A) allowable under Section 503(b)(1) of the Bankruptcy Code or pursuant to Sections 364(a), (b) or (c)(1) of the Bankruptcy Code, or (B) secured credit pursuant to Sections 364(c)(2) and (3) on more favorable terms than those offered by the DIP Lenders or provided in this Second Interim Order;

iii.      the terms of the DIP Financing Documents, pursuant to which the postpetition loans, advances, letters of credit and other credit and financial accommodations will be made or provided to Debtors by DIP Lenders have been negotiated at arms' length and in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The Debtors further represent that DIP Lenders are extending financing to the Debtors in good faith and DIP Lenders are entitled to the benefits of the provisions of Section 364(e) of the Bankruptcy Code;

iv.      the relief requested by the Motion is necessary to avoid immediate and irreparable harm to their estates. Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Second Interim Order.

AND THE COURT HEREBY FURTHER FINDS AND DETERMINES THAT:

P.      Neither the DIP Lenders nor the Pre-Petition Lenders control the operations of any Debtor.

Q.      Good and sufficient cause exists for the issuance of this Second Interim Order, to prevent irreparable harm to the Debtors' estates;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Motion is granted in its entirety on an interim basis with all of the terms and protections to be provided as set forth herein with a final hearing to be held on August 23, 2005 at 10:00 a.m. in the Court's regular courtroom (the *"Final Hearing"*).  Subject to Section 364(e) of the Bankruptcy Code, the rights and objections of the Committee and the parties in interest are reserved pending the Final Hearing.

2.      The consummation by the Debtors of the purchase of the Reconveyed Property pursuant to the terms of the Receivables Repurchase Documents is hereby approved. The transaction represents a sound exercise of Debtors' business judgment and is in the best interests of the Debtors, their creditors, their estates, and other parties in interest. The Debtors have demonstrated both (i) sufficient and sound business purposes for the purchase of the Receivables and (ii) compelling circumstances for such purchase to be approved in connection with the approval of the DIP Credit Facility.

3.      The purchase price paid by the Debtor-Originators for the Reconveyed Property is an amount equal to the GECC Repurchase Price plus, to the extent required, certain additional amounts payable to satisfy the Indemnification Obligations and the Expense Reaffirmation (which obligations expressly survive the termination of the RPSA and are herein re-affirmed by the Debtors) whether incurred prior to or after the Petition Date. In exchange for the purchase price under the Receivables Repurchase Documents, the Debtor-Originators acquired assets having a value materially greater than such purchase price. Consequently, the Receivables Purchase is a transaction that benefits the Debtors, their creditors, their estates and other parties in interest. No holder of a claim against Receivables Subsidiary is prejudiced by the Receivables Purchase because all creditors of the Receivables Subsidiary have consented to the Receivables Purchase pursuant to the terms of this Second Interim Order.

4.      The Debtors are hereby authorized to borrow funds from, obtain letters of credit from, and incur debt to the DIP Lenders in an amount up to $65,000,000, pursuant to and in accordance with the terms and conditions of the DIP Credit Facility, from and after the date of this Second Interim Order, whether prior or subsequent to the execution and delivery of the DIP Financing Documents, and consistent, in amount and type of expenditure, with the Budget, *Exhibit A* hereto; provided however, that the loans or Cash Collateral are also to be used to fund (i) the Receivables Purchase, (ii) the Indemnification Obligations (which indemnification obligations, by their terms, expressly survive termination of the RPSA and are herein re-affirmed by the Debtors) and (iii) the expenses re-affirmed pursuant to the Expense Reaffirmation (which obligations, by their terms, expressly survive termination of the RPSA and are herein re-affirmed by the Debtors), whether incurred before or after the Petition Date. The proposed borrowings and other extensions of credit under the DIP Financing Documents are hereby approved. The DIP Agent and the DIP Lenders shall have the rights and the obligations set forth in the DIP Financing Documents to make loans, advances and/or financial accommodations pursuant to the terms and conditions thereof. The Budget may, without further approval of the Court but subject to the agreement and approval of the DIP Lenders, be supplemented or extended so long as changes do not vary materially from *Exhibit A*, but any material variances thereto shall be subject to approval of the Court and the agreement and approval of the DIP Lenders.

5.      The Debtors shall not apply for or obtain letters of credit from any institution or entity other than the DIP Lenders.

6.      For any and all obligations of the Debtors to the DIP Agent and/or the DIP Lenders under and in the DIP Financing Documents, arising after the date of this Second Interim Order (the *"Post-Petition Obligations"* or *"DIP Credit"*), and in addition to the rights granted below, subject to the Carve-Out, the DIP Lenders are granted an allowed super-priority

administrative claim in accordance with Section 364(c)(1) of the Bankruptcy Code having a priority in right of payment over any and all other obligations (including the Pre-Petition Obligations to the Pre-Petition Lenders, which for avoidance of doubt are not entitled to treatment as a super-priority administrative claim except to the extent of any Adequate Protection Claim (as defined below) for diminution in value or as adequate protection for priming by the DIP Credit Facility), liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by the Debtors and over any and all administrative expenses or priority claims of any kind including as specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code, whether arising in the Debtors' Chapter 11 Cases or in any superseding Chapter 7 cases.

7.     Pursuant to Bankruptcy Code §§ 362, 363(e) and 364(c) and (d), as security for the prompt payment and performance of any and all Post-Petition Obligations incurred by one or more of the Debtors, individually or collectively, to the DIP Lenders of whatever nature or description, the Debtors are hereby authorized to grant to the DIP Agent for the *pro rata* benefit of the DIP Lenders, valid, binding, enforceable and perfected first priority liens, mortgages and security interests, superior to all other creditors of the Debtors' estates, in and to all of the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired by the Debtors before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation: real property (including without limitation all leasehold interests, mineral leases and mineral and water rights), accounts, including but not limited to the Reconveyed Property, deposit accounts (including but not limited to the accounts set forth on *Exhibit B* to this Second Interim Order, inventory, equipment, rolling stocks (including titled and untitled vehicles), cash, cash equivalents, general intangibles (including intellectual property, trademarks, trade names,

interests in partnerships, joint ventures, investment properties, letter of credit rights, right to receive payments under any government contract, supporting obligations, commercial tort claims, deposit accounts and investment property, securities and any bankruptcy-related causes of action and recoveries thereunder, including but not limited to all causes of action under Chapter 5 of the Bankruptcy Code and recoveries thereunder, including § 506(c), §§ 544 through 550 and § 553 or other applicable law (collectively, *"Avoidance Actions"*), but excluding any foreign assets that by law are not subject to the Bankruptcy Court's jurisdiction (the *"Excluded Assets"*) (collectively, the *"Post-Petition Collateral"* or the *"Collateral"*), subject only to the Carve-Out (as hereinafter defined) and permitted liens and security interests which (i) existed and are valid, fully perfected and enforceable on the Petition Date (other than liens and security interests in Pre-Petition Collateral in connection with the Pre-Petition Loan Documents) and (ii) are not avoidable under Chapter 5 of the Bankruptcy Code or applicable state law (hereinafter referred to as *"Permitted Liens"*).

8.      As adequate protection for any post-petition diminution in value of the Pre-Petition Lenders' interests in the Pre-Petition Collateral, including without limitation for any diminution in value caused by the Debtors' post-petition use of the Pre-Petition Collateral, including Cash Collateral, as such term is defined in Bankruptcy Code § 363(a) ("*Cash Collateral*"), the Pre-Petition Agent for the ratable benefit of each Pre-Petition Lender is hereby granted a joint and several post-petition claim in the amount of the diminution in value of the Pre-Petition Lenders' interest in Pre-Petition Collateral (the *"Adequate Protection Claim"*) against the Debtors' estates.  The Adequate Protection Claim is limited to the diminution in value (to the fullest extent of the meaning of that phrase as it is defined under the Bankruptcy Code and applicable law) in the Pre-Petition Collateral.  In order to secure such Adequate Protection Claim, the Pre-Petition Agent for the benefit of the Pre-Petition Lenders is hereby

granted a first priority security interest in and a lien upon (collectively, the *"Replacement Liens"*) upon (x) the Pre-Petition Collateral and all post-petition proceeds of the Pre-Petition Collateral, and (y) the Post-Petition Collateral and all proceeds thereof, subject only to (1) Permitted Liens, (2) the Carve-Out, (3) the liens granted to the DIP Agent pursuant to Section 364 of the Bankruptcy Code, and (4) the liens and security interests existing on the Petition Date in favor of the Pre-Petition Agent. To further provide adequate protection for the Adequate Protection Claim, the Pre-Petition Lenders are granted an allowed super-priority administrative claim in accordance with Section 507(b) of the Bankruptcy Code having a priority, which is *pari passu* with GECC Super-Priority Claim (as defined below) and is superior in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by the Debtors and over any and all administrative expenses or priority claims of any kind including as specified in, or ordered pursuant to §§ 326, 330, 331, 503(b), 507(a) or 507(b) of the Bankruptcy Code, arising in the Debtors' Chapter 11 cases, but subject to the Carve Out and the super-priority administrative claim granted to the DIP Lenders. As further adequate protection, the Debtors are hereby ordered to pay to the Pre-Petition Agent for the ratable account of the Pre-Petition Lenders (a) on the closing date of the DIP Credit Facility (the *"Closing Date"*) all interest and expenses (including but not limited to all fees and expenses of the Pre-Petition Agent and its professionals) accrued on the Pre-Petition Obligations to that date, (b) thereafter, pay interest monthly in arrears at the non-default rate set forth in the Pre-Petition Loan Documents, and (c) subject to the reservation of rights set forth below, accrue monthly the difference between the default rate and nondefault rate to be payable on the earlier of (i) the Termination Date or (ii) payment in full of the Pre- Petition Obligations.  The Debtors, the Committee and other parties in interest reserve fully their rights to contest the Pre-Petition Lenders' right to accrue and receive payment on the application of the incremental default rate

(with the Pre-Petition Lenders reserving all rights to receive such incremental default rate of interest) for default interest otherwise accruing on and after July 26, 2005.

9.      The Receivables Repurchase has been consummated and the Reconveyed Property is deemed Collateral under (and subject to) the terms of this Second Interim Order. The DIP Agent has a first senior, fully perfected lien and security interest in the Reconveyed Property and all lock boxes or accounts into which Receivables (as defined in the Pre-Petition Loan Agreement) have been, are or will be collected or deposited including without limitation accounts previously owned by Receivables Subsidiary.  Such accounts shall be hereafter deemed to be owned by the respective Debtor-Originators of the Receivables, subject to the first senior lien of the DIP Agent for the DIP Lenders.

10.     In consideration for the consensual release and discharge of the liens and security interests of GECC in the SPV Reconveyed Property granted to GECC and the termination of the Receivables Subsidiary Securitization Documents as contemplated by the RPRA, the Debtors re-affirm the Indemnification Obligations and Expense Reaffirmation. Amounts owed by the Debtors with respect to the Indemnification Obligations and Expense Reaffirmation shall be entitled to and shall constitute a super-priority administrative expense claim under Section 507(b) of the Bankruptcy Code (the "GECC Super-Priority Claim"). The GECC Super-Priority Claim shall be pari passu in priority to the super-priority claim provided to the Pre-Petition Lenders under Section 507(b) of the Bankruptcy Code but shall be junior in priority and subordinate to (i) the super-priority claim provided to the DIP Agent for the benefit of the DIP Lenders and (ii) the Carve-Out (as defined below).

11.     Notwithstanding any contrary provision of this Second Interim Order or the DIP Financing Documents, the liens and super-priority claims granted to the DIP Lenders, the Pre-Petition Lenders and the GECC Super-Priority Claim shall be subject and subordinate to,

following the occurrence and during the pendency of a Carve-Out Event (as defined below), (a) a carve-out of $2.75 million for the allowed fees and expenses of the Debtors' professionals (other than Debtors' ordinary course professionals) and the Committee and its professionals retained prior to the Termination Date; (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); and (c) any fees payable to the Clerk of the Bankruptcy Court and any agent thereof, plus all fees and expenses of the kind described in the foregoing clauses (a), (b) and (c) of this paragraph incurred prior to a Carve-Out Event (as defined below) but not yet paid to the extent such fees and expenses are approved by the Bankruptcy Court (collectively, the *"Carve-Out"*) subject to the right of the DIP Agent, the DIP Lenders, the Pre-Petition Lenders, GECC, the Pre-Petition Agent, the U.S. Trustee, and any other party in interest to object to the award of any such fees and expenses.

12.     Prior to the Termination Date (as defined in the Post-Petition Credit Agreement), the Debtors shall be permitted to pay compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code §§ 330 and 331 or otherwise pursuant to an order of this Court, as the same may be due and payable, and such payments shall not reduce the Carve-Out subject to the rights of the DIP Lenders, DIP Agent, the Pre-Petition Lenders, the Pre-Petition Agent, the U.S. Trustee, and any other party in interest to object to such payments. Upon the Termination Date and notice by the DIP Agent to the Debtors (the *"Carve-Out Event Notice"*), the right of the Debtors to pay professional fees outside the Carve-Out shall terminate (a *"Carve-Out Event"*), and, upon such occurrence, the Debtors, after receipt of the Carve-Out Event Notice from the DIP Agent, shall provide immediate notice by facsimile to all professionals whose fees and expenses are included within the Carve-Out informing them that a Carve-Out Event has occurred and further advising them that the Debtors' ability to pay professionals is subject to the Carve-Out.

- 15 -

13.     The Pre-Petition Lenders and Pre-Petition Agent assert under the facts and circumstances of this case that there is no basis for a recovery under § 506(c) of the Bankruptcy Code, and the Debtors waive any § 506(c) claim against the Pre-Petition Agent and Pre-Petition Lenders and DIP Agent and DIP Lenders.

14.     Each Debtor agrees (i) not to contest any Defaults or Events of Default which were or could have been declared by the Pre-Petition Agent as of the Petition Date; (ii) not to contest any provisions of the Pre-Petition Loan Documents; (iii) not to contest the amount of the Debtors' indebtedness to the Pre-Petition Agent and the Pre-Petition Lenders as of the Petition Date except with respect to any mathematical error; (iv) not to contest the conduct of the Pre-Petition Agent or the Pre- Petition Lenders in administering the Pre-Petition Loan Documents; (v) not to contest the validity of the transactions related to the RPSA and the termination thereof or to contest the conduct of GECC with respect to transactions related to the RPSA or the termination thereof; and (vi) not to assert any claims or make any demands against the Pre-Petition Agents and/or the Pre-Petition Lenders or GECC with respect to lender liability theories and pursuant to Sections 510, 544, 547, 548 and 549 of the Bankruptcy Code.

15.     For purposes of this Second Interim Order, each Debtor agrees not to contest or to challenge that the mortgages, liens and security interests granted to the Pre-Petition Agent for the ratable benefit of the Pre-Petition Lenders under the Pre-Petition Financing Agreements are senior, valid, fully perfected, non-avoidable and enforceable mortgages, security interests and liens fully securing the Pre-Petition Indebtedness (the *"Lien Finding"*).  The Committee, any other committee appointed by the U.S. Trustee, or any other party with standing, excluding only the Debtors, has the right to challenge the Lien Finding on or before August 19, 2005 by filing a pleading in these chapter 11 cases (and serving a copy on counsel for Harris N.A.) describing the nature of the challenge(s) to the Lien Finding; in the absence of the timely filing of such

- 16 -

pleading or providing a letter to Debtors' counsel and counsel to the Pre-Petition Lenders

(*"Letter"*) and in the absence of listing such collateral in a pleading or Letter as subject to an

objection or challenge such party shall be forever barred from challenging the validity, priority

and enforceability of the Pre-Petition Lenders' liens and the Lien Finding.  The DIP Lenders and

Pre-Petition Lenders have consented to use of Loan proceeds or Cash Collateral to pay costs of

Committee's professionals in connection with any investigation of the Lien Finding but have not

consented to the use of the proceeds of DIP Credit Facility or Cash Collateral to be used to

pursue or prosecute any claim or cause of action against DIP Agents, DIP Lenders, Pre-Petition

Agent and Pre-Petition Lenders or any of their successors, assigns or advisors for any reason.

16.     So long as there are any Obligations outstanding to the DIP Lenders under the

DIP Credit Facility and until the Adequate Protection Claim is satisfied, unless the DIP Agent

and the Pre-Petition Agent shall have given their prior written consent, or this Court enters an

order, upon proper notice to the DIP Agent and the Pre-Petition Agent and after a hearing,

requiring that all the Debtors' Obligations to the DIP Lenders and the Adequate Protection Claim

be immediately satisfied in full, the Debtors shall neither seek any further orders in the Debtors'

Chapter 11 Cases, nor support any applications therefor, which authorize: (a) under Bankruptcy

Code § 363, the use of cash collateral in which the DIP Agent or the Pre-Petition Agent has an

interest, or the sale, use, or lease, other than in the ordinary course of business, of other property

of the Debtors in which the DIP Agent or the Pre-Petition Agent has an interest; (b) except for a

financing that will satisfy all Obligations outstanding to DIP Agent, DIP Lenders and the

Adequate Protection Claim and in the good faith judgment of the Debtors' provide adequate

protection for the rights and interests of the Pre-Petition Lenders, the obtaining of credit or the

incurring of indebtedness pursuant to Bankruptcy Code §§ 364(c) or (d), or any other grant of

rights against the Debtors and/or their estates, secured by a lien, mortgage or security interest in

the Post-Petition Collateral held by the DIP Agent or the Pre-Petition Agent or entitled to priority administrative status which is junior, equal or superior to that grant to the DIP Agent, the DIP Lenders or the Pre-Petition Lenders (with respect to the Replacement Liens) herein; or (c) the return of goods by the Debtors pursuant to Bankruptcy Code § 546(c).

17.     In addition to any rights granted to the DIP Agent and DIP Lenders under the DIP Credit Facility, and to the Pre-Petition Agent and Pre-Petition Lenders under this Second Interim Order after the Court's approval thereof, the DIP Agent for the ratable benefit of the DIP Lenders and the Pre-Petition Agent for the ratable benefit of the Pre-Petition Lenders (as applicable) shall be entitled to charge the Debtors' accounts wherever located or receive reimbursement thereof, without application to the Court, for: (a) all of the DIP Agent's and the DIP Lenders' reasonable fees and expenses, their reasonable attorneys' fees and legal expenses, and their other advisors' or professionals' reasonable fees and expenses, all such fees and expenses arising from or related to the DIP Credit Facility or any actions taken in connection with the Chapter 11 Cases, including without limitation the negotiating, closing, documenting and obtaining of Court approval thereof, and all proceedings in connection with the interpretation, amendment, modification, enforcement or carrying out of the DIP Credit Facility or this Second Interim Order at any time, and all reasonable expenses, costs and charges in any way or respect arising in connection therewith or related thereto; (b) all of the Pre-Petition Agent's and the Pre-Petition Lenders' reasonable fees and expenses, their reasonable attorneys' fees and legal expenses, and their other advisors' or professionals' reasonable fees and expenses, all such fees and expenses arising from or related to the Pre-Petition Loan Documents, the Adequate Protection Claim or any action taken in connection with the Chapter 11 Cases, including without limitation the negotiating and obtaining of Court approval thereof and proceedings in connection with the interpretation, amendment, modification, enforcement or

carrying out of the Pre-Petition Loan Documents or the Adequate Protection Claim or this Second Interim Order at any time, and all reasonable expenses, costs and charges in any way or respect arising in connection therewith or related thereto; and (c) all of the DIP Agent's facility, administrative and filing fees, recording taxes and fees, title insurance premiums and fees, reasonable internal examination and audit expenses; and such fees and expenses in the foregoing subparagraphs (a), (b) and (c) (collectively, the *"Reimbursable Fees")* shall be funded through loans under the DIP Credit Facility, charged to the Debtors' account and shall constitute a part of the Debtors' Obligations but shall not constitute an item paid in accordance with the Budget. The Debtors are also authorized and ordered to pay all fees related to the Expense Reaffirmation (regardless of whether incurred pre-petition or post-petition) upon demand without further order of this Court.

18.      The Debtors, at their expense, shall (a) continue to at all times keep the Collateral fully insured against all loss, peril and hazard and make the DIP Agent and the Pre-Petition Agent co-insured and loss payee as their interests appear under such policies, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to such Collateral, all as provided under the DIP Credit Facility, and will provide the DIP Agent and the Pre-Petition Agent with proof thereof upon written demand and will give the DIP Agent and the Pre-Petition Agent access to their records in this regard.

19.      In accordance with the provisions of the Post-Petition Credit Agreement and this Second Interim Order, if required by the DIP Agent, Debtors are authorized and directed to remit, in kind, immediately to the DIP Agent, all monies, checks, drafts and any other payments or collections received from its account debtors and other parties, now or hereafter obligated to pay Debtors or any prior existing securitization for services provided by Debtors or for inventory or other property of Debtors' estates. DIP Lenders are authorized to apply such payments and

proceeds received by Debtors to the Obligations in accordance with the DIP Financing Documents and this Second Interim Order. The Debtors are hereby authorized to open accounts at Harris N.A. to effectuate the purposes of this Second Interim Order, cash management and the perfection of the security interests and liens granted by this Second Interim Order to the DIP Agent and Pre-Petition Agent for the respective DIP Lenders and Pre-Petition Lenders.

20.     The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to permit (a) the Debtors to implement the terms of the DIP Credit Facility, (b) the Debtors to grant the Replacement Liens as adequate protection to the Pre-Petition Agent for the benefit of the Pre-Petition Lenders, (c) the Debtors to create, and the DIP Agent or the Pre-Petition Agent, as the case may be, to perfect, any and all liens, mortgagees and security interests granted to it hereunder; *provided, however,* that neither the DIP Agent nor the Pre-Petition Agent shall be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien, mortgage or security interest granted by this Second Interim Order or take any other action to perfect such liens, mortgages and security interests, such perfection of liens, mortgages and security interests are hereby deemed perfected; if, however, the DIP Agent or the Pre-Petition Agent, as the case may be, shall, in its sole discretion, elect for any reason to file, record or serve any such financing statements or other documents with respect to such liens and security interests, the Debtors shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Second Interim Order.

21.     The time of payment of any and all Post-Petition Obligations of the Debtors arising out of or incurred pursuant to the DIP Credit Facility shall not be altered, extended or

impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which may hereafter be entered.

22. Any and all Post-Petition Obligations of one or more of the Debtors arising out of or incurred pursuant to the DIP Credit Facility shall be immediately due and payable, the DIP Lenders shall have no obligation to make loans and/or advances to the Debtors, and the DIP Credit Facility shall terminate, upon the occurrence of the earlier of: (1) the Maturity Date provided for in the Post- Petition Credit Agreement (the *"Maturity Date"*); or (2) any of the following events (*"Terminating Events"* or *"Termination Event"*):

(a) any of the Chapter 11 Cases is either dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(b) a trustee or an examiner with the expanded powers of a trustee is appointed in any of the Chapter 11 Cases;

(c) any plan of reorganization of the Debtors is confirmed which does not provide for the payment in full of the Post-Petition Obligations upon the effective date of the plan, unless each DIP Lender as to itself shall otherwise consent in writing;

(d) other than as contemplated in the Budget, any of the Debtors ceases operation of any of its businesses or takes any material action for the purpose of effecting the foregoing without the prior written consent of the DIP Agent;

(e) this Second Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially and adversely affect the rights of the DIP Agent and/or the DIP Lenders hereunder or shall materially and adversely affect the priority of any or all of the DIP Agent's and/or the DIP Lenders' claims, liens or security interests and which is not acceptable to the DIP Agent;

(f) the occurrence of an Event of Default under the DIP Financing Documents;

(g)      material non-compliance or default by the Debtors with any of the terms and provisions of this Second Interim Order;

(h)      any sale of Post-Petition Collateral is approved without the consent of the DIP Agent;

(i)      other super-priority claim or lien equal or superior in priority to that granted pursuant to this Second Interim Order or permitted hereunder shall be granted;

(j)      an examiner having enlarged powers under Section 1106(b) of the Bankruptcy Code shall be appointed for any of the Debtors; or

(k)      the automatic stay of Bankruptcy Code Section 362 is lifted so as to allow a party other than the DIP Lenders to proceed against any material asset of the Debtors.

(l)      A final order approving DIP Financing acceptable to the DIP Agent and the Debtors is not entered by August 30, 2005.

23.      Upon the occurrence of a Terminating Event:

(a)      the Debtors shall immediately segregate all of the Post-Petition Collateral, including without limitation cash collateral, and shall not be permitted to borrow funds hereunder absent the DIP Agent's prior written consent provided, however, that the Debtor shall be permitted to use Cash Collateral in the blocked account that was established pursuant to paragraph 30 consistent with the Budget for three (3) business days after the Terminating Event; and

(b)      the DIP Agent shall have the right, free of the restrictions of Bankruptcy Code § 362, (1) to take immediate reasonable action to protect and preserve the Collateral, and (2) after giving three (3) business days' prior written notice of a Terminating Event to the Debtors, the Office of the U.S. Trustee, and the Committee by the DIP Agent (the *"Termination Notice"*), to exercise its rights and remedies pursuant to the DIP Credit Facility and/or applicable law as to all

or such part of the Post-Petition Collateral as the DIP Agent, in its sole discretion, shall elect, unless, prior to the passage of such three (3) business days, the Maturity Date shall not have occurred and the Court shall have entered an order limiting or restraining the DIP Agent from exercising any or all such rights and remedies; provided nothing contained herein shall waive, limit, or impair the DIP Agent and DIP Lenders' ability to (i) contest on any basis the entry of such order and, (ii) subject to any final and appealable order of the Court to the contrary, assert or pursue their rights and remedies hereunder and under the DIP Financing Documents.

25.     Nothing in this Second Interim Order shall limit the rights of the Pre-Petition Lenders or the DIP Lenders to seek further relief (including additional adequate protection), or modification or termination of the automatic stay in accordance with Bankruptcy Code § 362(d).

26.     Nothing in this Second Interim Order shall limit the rights of any Pre-Petition Lender or any DIP Lender to assign all of its rights, claims and Obligations under the DIP Financing Documents or the Pre-Petition Financing Documents.

27.     The Debtors shall provide the DIP Agent and Pre-Petition Agent with such written reports, certified by the president, vice-president or chief financial officer of the relevant Debtor to be accurate to the best of his/her knowledge, information and belief, as are required under the DIP Financing Documents, and such additional written reports as the DIP Agent and Pre-Petition Agent, in their reasonable discretion, shall require.

28.     The Debtors are directed to keep their books and records of original entry, including without limitation, records of sale, credits authorized (whether or not credit memoranda have been issued), purchases, accounts receivable, bills of lading, cash receipts, and cash disbursements, current and updated, so that all business activity is posted to them in the ordinary course of the Debtors' businesses.

29.     The DIP Agent and Pre-Petition Agent shall have the right to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtors, and the Debtors shall make all of same available to the DIP Agent and its representatives for such purposes.

30.     The Debtors shall continue to maintain the blocked account and lockbox system for their receivables, in form and substance satisfactory to the DIP Agent, established pursuant to the terms of the Interim Order.

31.     To the extent that all cash and checks of the Debtors currently in their possession, bank accounts, lockbox accounts or otherwise, and the proceeds thereof, if any, are proceeds of the Collateral, upon entry of this Second Interim Order, the Debtors shall deliver such proceeds to the DIP Agent, and thereafter the Debtors and any successor to the Debtors, including without limitation any successor trustee or trustees, shall immediately deliver any and all payments or proceeds realized upon the sale, liquidation, collection or disposition of the Post-Petition Collateral or Pre-Petition Collateral, including without limitation the proceeds of sales authorized pursuant to Bankruptcy Code § 363 or any plan of reorganization (*"Proceeds"*) which come into their possession to the DIP Agent, in the form received.

32.     The DIP Agent is authorized to accrue interest on the outstanding balance of the Obligations pursuant to the DIP Financing Documents, and to apply remittances from the Debtors against interest as set forth herein and therein.

33.     Subject to the other terms of this Second Interim Order, the DIP Agent is authorized, notwithstanding the provisions of Bankruptcy Code § 362, to retain and apply the proceeds of the Post-Petition Collateral including the Pre-Petition Collateral as follows:

> (A)     Prior to the occurrence of the Termination Date (as defined in the Post-Petition Credit Agreement), all payments and collections from Pre-Petition Collateral or Post-Petition Collateral (including Cash Collateral) except as provided in subparagraph (C)

below shall be applied, *first,* to the payment of normal operating expenses consistent, in amount and type of expenditure, with the Budget or as otherwise approved by order of the Bankruptcy Court; *second*, to the costs, fees and expenses of the DIP Agent (including without limitation the reasonable fees and expenses of its counsel and other professionals employed or retained by the DIP Agent); *third*, to interest and fees then due and to the prepayment of all Loans (as defined in the Post-Petition Credit Agreement) and LC Disbursements (as defined in the Post-Petition Credit Agreement) hereunder until all Loans and LC Disbursements shall be fully paid (but without any reduction in the DIP Commitments resulting from such prepayments); *fourth*, to be held by the DIP Agent in the Cash Collateral Account until released or applied pursuant to Section 9.04 of the Post-Petition Credit Agreement; and *fifth*, as this Second Interim Order shall provide and otherwise as shall be determined by the Bankruptcy Court.

(B)     After the occurrence of the Termination Date, all payments and collections from Pre-Petition Collateral or Post-Petition Collateral (including proceeds from asset sales and Cash Collateral) shall be applied, *first*, to the payment of all costs and expenses incurred by the DIP Agent which the Borrower has agreed to pay under Section 11.03 of the Post-Petition Credit Agreement, including without limitation any reasonable costs and expenses incurred by the DIP Agent in monitoring, verifying, protecting, preserving or enforcing the Liens (as defined in the Post-Petition Credit Agreement) on the Collateral or in protecting, preserving or enforcing rights under the DIP Financing Documents (such funds to be retained by the DIP Agent for its own account unless it has previously been reimbursed for such costs and expenses by the DIP Lenders, in which event such amounts shall be remitted to the DIP Lenders to reimburse them for payments previously made to the DIP Agent); *second*, to the payment of principal and interest on all outstanding Loans (as defined in the Post-Petition Credit Agreement) and LC Disbursements (as defined in the Post-Petition Credit Agreement) until all such amounts are fully paid, then to be held as collateral for all outstanding LC Exposure (as defined in the Post- Petition Credit Agreement) (in an amount equal to 105% thereof) under the Post-Petition Credit Agreement; *third*, to the payment of all other outstanding Post-Petition Obligations until all such amounts are fully paid; *fourth,* to the Pre-Petition Obligations, and to collateralize any letters of credit issued under the Pre-Petition Credit Agreement until all such Pre-Petition Obligations shall be fully paid and all such letters of credit shall be fully collateralized

(subject to the Carve-Out); and *fifth*, as shall be determined by the Bankruptcy Court.

(C)     To the extent that any sales of assets which include any Pre-Petition Collateral or Post-Petition Collateral occur prior to the Termination Date and outside the ordinary course of business (none to occur without Bankruptcy Court approval and with the DIP Lenders and the Pre-Petition Lenders reserving all rights, if any, to object to any such sale), 100% of the Net Proceeds (as hereinafter defined) thereof in excess of $1,000,000 per disposition or series of related dispositions and 100% of the Net Proceeds thereof in excess of $5,000,000 in the aggregate for all dispositions must be paid to the DIP Agent for the account of the DIP Lenders  and the Pre-Petition Lenders for application to the Pre-Petition Credits (as defined in the Post-Petition Credit Agreement) and the DIP Credit as described below. Asset sale proceeds shall not include any casualty or condemnation proceeds to the extent Holdings, the Company, or the relevant Subsidiary Guarantor (as defined in Post Petition Credit Agreement) has elected to use such proceeds to repair, rebuild, or replace the assets subject to such casualty or condemnation, no Event of Default exists and, to the extent of proceeds in excess of $5,000,000 with respect to any single casualty or condemnation event, the DIP Lenders have approved such repair, rebuilding or replacement. Any property so repaired, rebuilt or replaced shall constitute part of the Post-Petition Collateral and shall be subject to the Replacement Liens in favor of the Pre-Petition Agent and the Pre-Petition Lenders. As used herein with respect to asset sales the term *"Net Proceeds"* shall mean the gross sale price less actual taxes payable and the costs of such sale which have been approved by the DIP Agent. Any such proceeds of sale designated to pay such taxes and costs of sale which are not required to be disbursed at the closing of such sale shall be held in escrow by the DIP Agent and shall be subject to the lien of the DIP Agent, the DIP Lenders, the Pre-Petition Agent, and the Pre-Petition Lenders until applied to pay such taxes and costs of sale. Prior to the Termination Date, the Net Proceeds of asset sales in excess of $1,000,000 per disposition or series of related dispositions and 100% of the Net Proceeds thereof in excess of $5,000,000 in the aggregate for all dispositions shall be applied as follows:  *First,* to the DIP Agent for application to the DIP Exposure (as defined in the Post-Petition Credit Agreement) in an amount equal to the amount attributable to any Eligible Receivables (as defined in the Post-Petition Credit Agreement) in the Available Borrowing Base (as defined in the Post-Petition Credit Agreement) subject to such Disposition (as defined in the Post-Petition Credit Agreement);

*Second*, up to $100,000,000 of Net Cash Proceeds (as defined in the Post-Petition Credit Agreement) in the aggregate from all such Dispositions (as defined in the Post-Petition Credit Agreement) shall be applied to the Pre-Petition Obligations as provided in the Pre-Petition Credit Agreement; *Third*, to be held as cash collateral by the DIP Agent hereunder for the DIP Credit in such amount as the DIP Agent or the DIP Lenders may then require; and *Fourth,* to the Pre-Petition Obligations as provided in the Pre-Petition Credit Agreement.  Any proceeds of a Disposition (as defined in the Post-Petition Credit Agreement) described in this paragraph designated to pay actual taxes payable and costs of such Disposition shall be held by the DIP Agent in escrow until applied to pay such taxes and costs.  If the DIP Credit shall become fully paid from the Net Proceeds of asset sales, then any remainder Net Proceeds shall be applied to reduce the Pre-Petition Obligations of the Pre-Petition Lenders.  Following any asset sale in excess of $1,000,000 in the aggregate, the Available Borrowing Base shall be reset and the Budget shall be redetermined to the satisfaction of the requisite DIP Lenders.

*provided, further,* that (i) upon the Termination Date any consent to use of Cash Collateral given by the Pre-Petition Lenders or the DIP Lenders shall terminate and any rights of the Debtors to use Cash Collateral granted under this Second Interim Order or the DIP Financing Documents shall cease on the Termination Date and (ii) such applications of the Proceeds set forth in A and B above shall be free and clear of any claim, charge, assessment or other liability. Notwithstanding the application of Proceeds set forth in A above, Cash Collateral collected after the Petition Date but prior to the Termination Date may be used by the Debtors to pay any essential trade creditor in full (including for pre-petition trade payables), *provided* that (a) such payment is permitted by the Budget, (b) such essential trade creditor has executed an agreement (in form and substance satisfactory to the DIP Lenders and the Pre-Petition Lenders) with the Debtors pursuant to which such essential trade creditor agrees to continue to extend credit and supply goods and/or services to the Debtors on normal and customary enhanced terms in accordance with industry standards or terms acceptable to the DIP Agent and Pre-Petition Agent and consistent with the assumptions used in the projections of the Debtors that support feasibility

of the Debtors and that have been approved by the Pre-Petition Lenders and the DIP Lenders, and (c) the Court has approved such payment to such essential trade creditor.

34.    Pursuant to, and to the extent of, the provisions of Bankruptcy Code § 364(e), the liens, mortgages and security interests, administrative claims and adequate protection provisions granted by this Second Interim Order shall be binding on the Debtors, their estates and their successors and assigns even if this Second Interim Order is reversed or modified on appeal.

35.    The Debtors are hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of the DIP Credit Facility including, without limitation, the delivery to the DIP Agent of the original checks or other forms of remittance received by the Debtors which are the proceeds of the Post-Petition Collateral, the payment by the Debtors of any monies or assets in their possession and all sums required to be paid to the DIP Agent and the DIP Lenders under the DIP Credit Facility.

36.    Notwithstanding Bankruptcy Rule 7062, the terms and conditions of this Second Interim Order shall: (a) be immediately enforceable; and (b) not be stayed absent the grant of such stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors and the DIP Agent.

37.    The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting these Chapter 11 Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code; *provided, further,* that the terms and provisions of this Second Interim Order, as well as the liens, mortgages and security interests, administrative claims and adequate protection provisions granted under the DIP Credit Facility and to secure the Adequate Protection Claim, shall continue in this or any superseding case under the

- 28 -

Bankruptcy Code and such liens, mortgages and security interests and the Adequate Protection Claim and the GECC Super-Priority Claim shall maintain their priority as provided by this Second Interim Order until the Obligations and the Pre-Petition Obligations are satisfied in full.

38.     Nothing in this Second Interim Order shall limit the DIP Lenders' and the Pre-Petition Lenders' rights to seek modification of this Second Interim Order (with the consent of the Debtors if no default exists) or for cause if a default exists under the Post-Petition Credit Agreement.

39.     Nothing in this Second Interim Order shall in any way prejudice or compromise any rights that the Pre-Petition Lenders or the DIP Lenders may have against parties other than the Debtors.

40.     The provisions of this Second Interim Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, GECC, the Debtors, the Debtors' estates and their respective successors and assigns (including any trustee appointed as a representative of any Debtor's estate or in any subsequent proceeding under the Bankruptcy Code).

41.     To the extent that any of the provisions of this Second Interim Order shall conflict with any of the provisions of the DIP Financing Documents, this Second Interim Order is deemed to control and shall supersede the conflicting provision(s) in said agreement(s).

PREPARED BY:

Stephen D. Lerner (OH 0051284)
SQUIRE, SANDERS & DEMPSEY L.L.P
312 Walnut Street, Suite 3500
Cincinnati, Ohio  45202
Telephone:  513.361.1200
Facsimile:  513.361.1201
E-mail:          slerner@ssd.com

ATTORNEYS FOR
DEBTORS AND DEBTORS IN POSSESSION

**SCHEDULE I**

**LIST OF SUBSIDIARIES**

**ORIGINATOR-DEBTORS**:

Carpenter Enterprises Limited,

Daisy Parts, Inc.,

EaglePicher Automotive, Inc.,

EaglePicher Filtration & Minerals, Inc.,

EaglePicher Incorporated

EaglePicher Pharmaceutical Services, LLC,

EaglePicher Technologies LLC

**NON-ORIGINATOR DEBTOR**[2]:

Eagle-Picher Far East, Inc.

---

[2]     Holdings is not an Originator.

EXHIBIT A

BUDGET

**EAGLEPICHER HOLDINGS, INC.**
Summary Cash Flows - Variance
(US in $000's)

DRAFT          as of Close of Business 07/22/05
Confidential

## Forecast (July 22, 2005)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW:** | | | | | | | | | | | | | | | | | | |
| Wolverine | | (5) | 2,255 | 2,118 | (139) | (5) | (406) | 3,187 | 116 | (53) | 267 | 1,678 | 275 | (132) | 161 | 1,956 | 2,716 | 1,680 |
| Hillsdale | | (545) | (2,000) | (2,410) | (3,078) | (1,385) | (2,621) | (1,331) | 2,333 | (1,575) | (2,686) | (942) | 3,896 | (2,574) | 101 | 2,748 | (6,100) | (4,096) |
| Filtration & Minerals | | (185) | 40 | 870 | (327) | 325 | 315 | 427 | (297) | (571) | 159 | (447) | 679 | (342) | 469 | (807) | 638 | (587) |
| Technologies | | 2,362 | (1,326) | (636) | 332 | 179 | 386 | (1,167) | (119) | (919) | 1,061 | (34) | 72 | (843) | (106) | 869 | 1,370 | (1,562) |
| Commercial Power Solutions | | 554 | 483 | 96 | (352) | 77 | 186 | (16) | 150 | 136 | (42) | (192) | 54 | 366 | 8 | 40 | 567 | (379) |
| Headquarters | | (3,716) | (1,693) | (1,139) | (602) | (1,015) | (2,850) | (2,507) | (991) | (1,115) | (2,422) | (1,174) | (1,179) | (1,243) | (869) | (6,957) | (7,034) | (7,678) |
| **Cash Flow Before Financing** | | (1,576) | (1,766) | 1,318 | (4,516) | (1,823) | (6,199) | (1,406) | 1,382 | (4,477) | (3,662) | (1,111) | 3,788 | (4,766) | (206) | (2,128) | (7,842) | (12,141) |
| Deposits in lieu of LC's | (1) | (75) | (2,026) | | | | | (2,160) | | | | (2,127) | | | | (70) | (2,026) | (2,127) |
| Interest Payments | | | (150) | | | | | (50) | | | | (50) | | | | (2,026) | (2,160) | (50) |
| Financing Fees | | | | | | | | | | | | | | | | | | |
| **Net Cash Flow** | | (1,651) | (3,961) | 1,318 | (4,516) | (1,823) | (6,199) | (3,617) | 1,382 | (4,477) | (3,662) | (1,111) | 3,738 | (4,766) | (206) | (4,378) | (10,003) | (14,319) |

## Amended DIP Budget (June 10, 2005)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW:** | | | | | | | | | | | | | | | | | | |
| Wolverine | | 410 | 2,118 | 3,397 | (86) | (83) | (324) | 3,190 | 119 | (53) | 267 | 1,678 | 275 | (132) | 161 | 1,751 | 2,895 | 1,680 |
| Hillsdale | | (531) | (2,410) | (636) | (2,617) | 863 | (2,591) | (1,906) | 2,131 | (1,575) | (2,686) | (942) | 3,896 | (2,574) | 101 | (1,020) | (1,636) | (4,096) |
| Filtration & Minerals | | 830 | 870 | (638) | 198 | (216) | 174 | 508 | (166) | (571) | 159 | (447) | 679 | (342) | 469 | (898) | 1,378 | (587) |
| Technologies | | 600 | (149) | (636) | 435 | 2,084 | 2,084 | (2,042) | 1,379 | (919) | 1,061 | (34) | 72 | (843) | (106) | (1,016) | 1,014 | (1,562) |
| Commercial Power Solutions | | 141 | 342 | 96 | 8 | (87) | (97) | 314 | (87) | 136 | (42) | (192) | 54 | 366 | 8 | 4 | 367 | (379) |
| Headquarters | | (2,936) | (1,139) | (1,965) | (852) | (1,109) | (2,503) | (2,735) | (759) | (1,115) | (2,422) | (1,174) | (1,179) | (1,243) | (869) | (6,922) | (6,222) | (7,678) |
| **Cash Flow Before Financing** | | (2,586) | (369) | 811 | (2,893) | (1,108) | (2,894) | (2,581) | 2,596 | (4,477) | (3,662) | (1,111) | 3,788 | (4,766) | (206) | (8,962) | (4,533) | (12,141) |
| Deposits in lieu of LC's | (1) | | (2,019) | | | | | | | | | (2,019) | | | | (2,019) | (2,146) | (2,019) |
| Interest Payments | | | | | | | | (2,146) | | | | (50) | | | | | | |
| Financing Fees | | | | | | | | | | | | | | | | | | |
| **Net Cash Flow** | | (2,586) | (2,389) | 811 | (2,893) | (1,108) | (2,894) | (4,728) | 2,596 | (4,477) | (3,662) | (1,111) | 3,738 | (4,766) | (206) | (8,962) | (5,741) | (14,319) |

## Variance FAV/(UNFAV)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW:** | | | | | | | | | | | | | | | | | | |
| Wolverine | | (461) | 138 | (128) | (53) | 78 | (82) | (2) | (2) | (63) | 267 | 1,678 | 275 | (132) | 161 | (179) | 207 | 1,680 |
| Hillsdale | | (14) | (460) | (421) | (1,661) | (2,248) | (230) | 575 | 202 | (1,575) | (2,686) | (942) | 3,896 | (2,574) | 101 | (5,074) | 560 | (4,096) |
| Filtration & Minerals | | 64 | (830) | (638) | (515) | 541 | 141 | (51) | (171) | (571) | 159 | (447) | 679 | (342) | 469 | (736) | 91 | (587) |
| Technologies | | 1,761 | (1,177) | 1,415 | (103) | 646 | (1,718) | 875 | 237 | (919) | 1,061 | (34) | 72 | (843) | (106) | (1,592) | 357 | (1,562) |
| Commercial Power Solutions | | 413 | (554) | 397 | (310) | 174 | (97) | (330) | (87) | 136 | (42) | (192) | 54 | 366 | 8 | 36 | 200 | (379) |
| Headquarters | | (774) | (772) | 20 | (718) | (97) | (213) | 228 | (759) | (1,115) | (2,422) | (1,174) | (1,179) | (1,243) | (869) | (87) | (812) | (7,678) |
| **Cash Flow Before Financing** | | 1,010 | (3,416) | 507 | (2,022) | (715) | (2,305) | 1,175 | 2,596 | (4,477) | (3,662) | (1,111) | 3,788 | (4,766) | (206) | 2,806 | (6,247) | (12,141) |
| Deposits in lieu of LC's | (1) | (75) | (6) | | | | | (14) | | | | (75) | | | | (75) | (14) | (2,127) |
| Interest Payments | | | (150) | | | | | (50) | | | | (150) | | | | | | (50) |
| Financing Fees | | | | | | | | | | | | | | | | | | |
| **Net Cash Flow** | | 935 | (3,573) | 507 | (2,022) | (715) | (2,305) | 1,111 | 2,596 | (4,477) | (3,662) | (1,111) | 3,738 | (4,766) | (206) | 2,574 | (6,261) | (14,319) |

**Notes:**

(1) Deposits placed with vendors due to the inability to offer letters of credit during the interim DIP period, currently $300K is on deposit.

Disclaimer: Numbers are subject to change

EaglePicher_DIPLike 2D_072705

# EAGLEPICHER HOLDINGS, INC.
## Summary Cash Flows - Variance
(US in $000's)

DRAFT                                            as of Close of Business 07/22/05

Confidential

## Forecast (July 22, 2005)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW:** | | | | | | | | | | | | | | | | | | |
| Wolverine | | (51) | 2,205 | (241) | 139 | (5) | (406) | 3,187 | 116 | (63) | 267 | 1,678 | 275 | (132) | 151 | 1,956 | 2,716 | 1,980 |
| Hillsdale | | (545) | (2,000) | (1,966) | (1,385) | (1,385) | (2,821) | (1,331) | 2,333 | (1,875) | (2,988) | (942) | 3,886 | (2,574) | 101 | 2,748 | (6,100) | (4,098) |
| Filtration & Materials | | (185) | 40 | 387 | 325 | 325 | 315 | 427 | (227) | (571) | 159 | 679 | 679 | (542) | 499 | (807) | 638 | (587) |
| Technologies | | 2,362 | (1,326) | 566 | 332 | 179 | 368 | (1,167) | (119) | (919) | 1,061 | 72 | 72 | (643) | (106) | 489 | 1,370 | (1,092) |
| Commercial Power Solutions | | 554 | (162) | 483 | (302) | 77 | 166 | (16) | 150 | (136) | (42) | (94) | 54 | (124) | 40 | 567 | 567 | (379) |
| Headquarters | | (3,770) | (1,603) | (1,967) | (1,016) | (1,015) | (2,020) | (2,507) | (981) | (1,113) | (2,522) | (1,174) | 398 | (1,243) | (860) | (8,067) | (7,034) | (7,678) |
| **Cash Flow Before Financing** | | (1,374) | (2,786) | 1,318 | (1,933) | (1,823) | (6,199) | (1,406) | 1,282 | (4,477) | (3,662) | (1,111) | 3,718 | (4,766) | (255) | (2,128) | (7,442) | (12,141) |
| Deposits in lieu of LC's | (1) | (75) | – | – | – | – | – | – | – | – | – | – | – | – | – | (75) | – | – |
| Interest Payments | | – | (2,026) | – | – | – | (2,160) | (2,160) | – | – | (2,127) | (2,127) | – | – | – | (2,026) | (2,160) | (2,127) |
| Financing Fees | | – | (150) | – | – | – | – | – | – | – | – | – | (50) | – | – | (150) | – | (50) |
| **Net Cash Flow** | | (1,651) | (5,561) | 1,318 | (1,933) | (1,823) | (8,199) | (3,671) | 1,282 | (4,477) | (5,662) | (3,238) | 3,738 | (4,766) | (255) | (4,379) | (10,903) | (14,318) |

## Forecast (July 15, 2005)

| | Notes | Forecast Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW:** | | | | | | | | | | | | | | | | | | |
| Wolverine | | 77 | 1,972 | (154) | (228) | (5) | (406) | 3,187 | 116 | (63) | 267 | 1,678 | 275 | (51) | 161 | 1,804 | 2,716 | 1,980 |
| Hillsdale | | (1,247) | (3,537) | 1,910 | (3,678) | (864) | (2,821) | (1,196) | 2,498 | (1,822) | (2,988) | (867) | 3,961 | (2,574) | 101 | 1,410 | (5,611) | (3,714) |
| Filtration & Materials | | (429) | 1,176 | (491) | 294 | 900 | 300 | 12 | (196) | (47) | (196) | 153 | 29 | (322) | 499 | 105 | 461 | (672) |
| Technologies | | 1,603 | (1,031) | 1,033 | 386 | 101 | (97) | (1,766) | (119) | (1,864) | 861 | (94) | 72 | (643) | (106) | 1,410 | 426 | (1,633) |
| Commercial Power Solutions | | 505 | (278) | 158 | (36) | 73 | 306 | 462 | 43 | (180) | (42) | (146) | 54 | (124) | 40 | 421 | 522 | 103 |
| Headquarters | | (4,671) | (1,929) | (1,286) | (860) | (1,105) | (2,912) | (2,888) | (861) | (1,109) | (2,550) | (1,024) | (1,279) | (1,108) | (860) | (8,850) | (6,853) | (7,642) |
| **Cash Flow Before Financing** | | (4,137) | (3,626) | 1,170 | (4,110) | (899) | (5,627) | (1,906) | 1,281 | (4,686) | (4,315) | (260) | 3,123 | (5,513) | (255) | (4,430) | (7,564) | (11,578) |
| Deposits in lieu of LC's | (1) | – | (3,391) | – | – | – | – | (2,239) | – | – | – | (2,196) | – | – | – | (3,391) | (2,239) | (2,196) |
| Interest Payments | | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Financing Fees | | – | (150) | – | – | – | – | – | 78 | – | – | 59 | – | – | – | (150) | 78 | 59 |
| **Net Cash Flow** | | (4,137) | (6,918) | 1,170 | (4,110) | (899) | (5,627) | (4,229) | 1,290 | (4,686) | (4,315) | (2,474) | 3,123 | (5,513) | (255) | (7,820) | (10,147) | (14,046) |

**Notes:**
(1) Deposits placed with vendors due to the inability to offer letters of credit during the interim DIP period, currently $225K is on deposit.

## Variance FAV/(UNFAV)

| | | Week Ended 22-Jul | Week Ended 29-Jul | Week Ended 5-Aug | Week Ended 12-Aug | Week Ended 19-Aug | Week Ended 26-Aug | Week Ended 2-Sep | Week Ended 9-Sep | Week Ended 16-Sep | Week Ended 23-Sep | Week Ended 30-Sep | Week Ended 7-Oct | Week Ended 14-Oct | Week Ended 21-Oct | Month Ended July | Month Ended August | Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW:** | | | | | | | | | | | | | | | | | | |
| Wolverine | | (128) | 233 | (87) | 87 | – | – | (159) | – | (53) | – | (73) | – | (81) | 161 | 105 | (480) | (362) |
| Hillsdale | | 702 | 636 | (77) | (611) | 15 | 15 | (51) | (160) | (51) | (530) | (75) | 640 | (20) | 101 | 1,338 | 177 | 85 |
| Filtration & Materials | | 224 | (1,136) | (444) | 84 | 78 | 463 | 621 | 41 | (524) | 345 | 200 | – | – | – | (912) | 548 | 591 |
| Technologies | | 758 | (295) | 325 | (266) | 4 | 463 | (498) | 107 | 145 | 44 | (46) | 583 | – | – | 463 | 10 | (482) |
| Commercial Power Solutions | | 45 | 116 | 386 | 46 | 90 | (142) | 92 | 107 | 44 | – | (100) | – | – | – | 161 | 151 | 103 |
| Headquarters | | 901 | 136 | (681) | (866) | 66 | 92 | 381 | (20) | (38) | 28 | (150) | (171) | (135) | 8 | 1,097 | 181 | (35) |
| **Cash Flow Before Financing** | | 2,842 | (380) | (578) | 64 | 66 | 428 | 412 | (38) | 564 | (354) | (821) | 845 | 247 | (255) | 2,302 | 68 | (563) |
| Deposits in lieu of LC's | (1) | (75) | – | – | – | – | – | 78 | – | – | 59 | – | – | – | (75) | 78 | 59 |
| Interest Payments | | – | 1,365 | – | – | – | – | (50) | – | – | – | – | – | – | – | 1,365 | 78 | (50) |
| Financing Fees | | – | (150) | – | – | – | – | – | – | – | – | – | – | – | – | (150) | – | – |
| **Net Cash Flow** | | 2,487 | 956 | 128 | (396) | 64 | 428 | 612 | (8) | (38) | 683 | 615 | 247 | (295) | 3,442 | 144 | (285) |

# EAGLEPICHER HOLDINGS, INC.
## Summary Cash Flows
(US in $000's)

DRAFT

as of Close of Business 07/22/05

Confidential

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended September |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW** | | | | | | | | | | | | | | | | | | |
| Wolverine | | (51) | 2,255 | (241) | 159 | (5) | (406) | 3,187 | 116 | (63) | 267 | 1,678 | 275 | (132) | 161 | 1,958 | 2,716 | 1,660 |
| Hillside | | (545) | (2,906) | (1,966) | (3,878) | (1,385) | (2,821) | (1,331) | (237) | (1,875) | (2,686) | (942) | (942) | (2,574) | 131 | 2,748 | (6,030) | (4,096) |
| Filtration & Minerals | | (185) | 40 | 367 | (327) | 525 | 315 | 427 | (237) | (571) | 159 | (34) | 679 | (342) | 499 | (907) | 638 | (997) |
| Technologies | | 2,362 | (1,325) | 596 | 332 | 179 | 396 | (1,167) | (119) | (979) | 1,061 | (42) | 72 | (843) | (100) | 889 | 1,370 | (1,062) |
| Commercial Power Solutions | | 594 | 483 | 455 | (302) | 77 | 166 | (10) | 150 | (42) | (136) | (42) | 54 | (20) | 8 | 957 | 567 | (373) |
| Headquarters | | (3,710) | (1,633) | (1,887) | (852) | (1,915) | (2,626) | (2,622) | (991) | (1,113) | (1,124) | (132) | (1,179) | (1,243) | (969) | (6,957) | (7,034) | (7,878) |
| Cash From Before Financing | | (1,574) | (3,086) | (2,736) | (4,916) | (3,019) | (5,199) | (1,406) | 1,252 | (4,477) | (4,462) | (1,111) | 3,768 | (4,766) | (236) | (2,128) | (7,640) | (12,141) |
| | | | | | | | | | | | | | | | | | | |
| Deposits in lieu of LCs | [1] | (75) | | | | | | | | | | | | | | (75) | | |
| Interest Payments | | (2,026) | (2,026) | | | | (2,160) | (2,160) | | | (2,127) | (2,127) | | | (75) | (2,206) | (2,160) | (2,127) |
| Financing Fees | | (150) | | | | | (50) | (50) | | | | | (50) | | | (150) | (50) | (50) |
| **Net Cash Flow** | | **(1,651)** | **(5,091)** | **(2,736)** | **(4,916)** | **(3,019)** | **(5,199)** | **(3,617)** | **1,252** | **(4,477)** | **(6,462)** | **(2,238)** | **3,738** | **(4,766)** | **(236)** | **(4,378)** | **(10,003)** | **(14,319)** |

### LIQUIDITY:

| | | 22-Jul | 29-Jul | 5-Aug | 12-Aug | 19-Aug | 26-Aug | 2-Sep | 9-Sep | 16-Sep | 23-Sep | 30-Sep | 7-Oct | 14-Oct | 21-Oct | July | August | September |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DIP Revolver Borrowing Base | | 43,438 | 43,732 | 43,044 | 45,739 | 47,163 | 48,910 | 52,186 | 52,799 | 55,785 | 58,585 | 60,420 | 59,227 | 62,501 | 64,545 | 43,732 | 49,910 | 60,420 |
| Borrowing Base Suballotment | | 43,000 | 43,000 | | | | | | | | | | | | | 43,000 | | |
| DIP Revolver Balance | | 18,096 | 19,362 | 18,044 | 22,959 | 24,782 | 29,962 | 33,588 | 32,346 | 36,803 | 40,485 | 43,723 | 39,985 | 44,751 | 44,957 | 19,362 | 29,962 | 43,723 |
| Pad Portion LCs | | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,200 |
| Net Revolver Availability | | 24,904 | 23,638 | 23,550 | 20,580 | 19,680 | 18,728 | 15,368 | 17,253 | 15,762 | 14,000 | 13,487 | 16,042 | 14,560 | 16,399 | 24,370 | 16,728 | 13,497 |
| Cash | | 8,695 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Outstanding Checks | | (6,559) | | | | | | | | | | | | | 8 | | | |
| Accrued & Unpaid Professional Fees | | (2,079) | (2,202) | (2,365) | (2,711) | (3,058) | (1,529) | (1,875) | (2,499) | (2,560) | (1,929) | (2,379) | (2,986) | (3,418) | (2,104) | (2,202) | (1,529) | (2,379) |
| **Liquidity Net of Accrued Pro Fees** | | **24,961** | **23,436** | **25,186** | **21,868** | **20,622** | **19,199** | **17,493** | **18,754** | **16,812** | **16,972** | **16,117** | **17,097** | **15,132** | **18,283** | **26,168** | **19,199** | **15,117** |

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Net Cash Flow** | | | | | | | | | | | | | | | | | | |
| DIP Model April 5 | | (1,651) | (5,981) | 1,318 | (4,916) | (1,923) | (5,198) | (3,617) | 1,252 | (4,477) | (3,862) | (3,238) | 3,738 | (4,766) | (206) | | | |
| Current Week | | 2,696 | (3,266) | (1,947) | (6,863) | (8,986) | (13,885) | (17,502) | (16,250) | (20,727) | (24,589) | (27,827) | (23,889) | (28,655) | (28,860) | | | |
| Cumulative | | | | | | | | | | | | | | | | | | |
| Prior Weeks | | (4,137) | (8,916) | 1,190 | (4,110) | (1,623) | (5,827) | (4,229) | 1,290 | (4,085) | (4,315) | (2,476) | 3,738 | (4,706) | (206) | | | |
| Cumulative | | 209 | (8,707) | (5,517) | (9,627) | (11,516) | (17,142) | (21,372) | (20,082) | (24,167) | (28,482) | (30,958) | (27,836) | (28,860) | | | | |
| Change (current less prior) | | 2,487 | 955 | 128 | (806) | 86 | 428 | 612 | (38) | (392) | 653 | (762) | 3,123 | (4,706) | (5,113) | | | |
| Change in Cumulative (current less prior) | | 2,487 | 3,442 | 3,570 | 2,764 | 2,830 | 3,258 | 3,870 | 3,832 | 3,440 | 4,093 | 3,331 | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| **Borrowing Base** | | | | | | | | | | | | | | | | | | |
| DIP Model April 5 | | 48,541 | 49,262 | 49,258 | 51,271 | 51,571 | 53,864 | 55,216 | 55,558 | 56,265 | 58,890 | 59,402 | 63,453 | 64,545 | | | | |
| Amendment June 10 | | 43,616 | 44,532 | 43,651 | 46,421 | 47,463 | 50,256 | 52,677 | 52,640 | 56,285 | 56,585 | 60,420 | 59,227 | 62,501 | | | | |
| Prior Week | | 43,438 | 43,732 | 43,584 | 45,739 | 47,163 | 48,910 | 52,186 | 52,799 | 55,785 | 60,420 | 51,126 | 48,003 | 59,881 | | | | |
| Current week | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| **Borrowings** [1] | | | | | | | | | | | | | | | | | | |
| DIP Model April 5 | | 32,604 | 35,192 | 34,361 | 37,275 | 38,383 | 41,277 | 46,004 | 43,409 | | | | | | | | | |
| Amendment June 10 | | 19,958 | 26,875 | 25,685 | 29,734 | 31,683 | 37,310 | 41,540 | 40,249 | 44,334 | 48,949 | 51,126 | 48,003 | 59,881 | | | | |
| Prior week | | 18,096 | 19,362 | 18,044 | 22,959 | 24,782 | 29,962 | 33,588 | 32,346 | 36,803 | 40,485 | 43,723 | 39,985 | 44,751 | | | | |
| Current week | | | | | | | | | | | | | | | | | | |

### Notes:
(1) Deposits placed with vendors due to the inability to proffer letters of credit during the interim DIP period, currently $300K is on deposit.
(2) Monthly totals are based on actual calendar months.
(3) Does not include any payments under a potential KERP

(1) Borrowings do not include LCs

EaglePicher_DIP.july 22_072705

Disclaimer: Numbers are subject to change

# EAGLEPICHER HOLDINGS, INC.

**Financing Assumptions**
(US$ in 000's)

DRAFT as of Close of Business 07/22/05
*Confidential*

**Pre-Petition Capital Structure:**

| | |
|---|---:|
| GE Securitization | $ 17,369 |
| **Credit Facility** | |
| Revolver | 96,488 |
| Letters of Credit | 27,301 |
| Total Revolver | 123,789 |
| Term Loan | 127,135 |
| **Total Pre-Petition Secured** | **268,293** |
| Petition Date Cash Balance | - |

**DIP Financing:**

| | |
|---|---:|
| Interim Revolver | $ 43,000 |
| Final Revolver | 65,000 |
| LC Sub-Limit | 5,000 |
| Amin. Expense Carve-out | 3,000 |

**DIP Financing Rates:**

| | | |
|---|---|---:|
| Interim Revolver | Prime + | 3.00% |
| Final Revolver | Prime + | 1.00% |
| Unused Commitment Fee | | 0.50% |
| Letters of Credit | | 3.00% |
| Assumed Prime Rate | | 6.25% |
| Assumed LIBOR Rate | | 3.63% |

**DIP Financing Fees:**

| | |
|---|---:|
| Closing Fee (Interim) | 550 |
| Closing Fee | 150 |
| Monthly Servicing Fee | $ 25 |

Disclaimer: Numbers are subject to change

# EAGLEPICHER HOLDINGS, INC.

**Debt Forecast**
(US$ in 000's)

DRAFT

as of Close of Business 07/22/05
*Confidential*

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consolidated Net Cash Flow Before Financing | | (1,576) | (3,796) | 1,318 | (4,916) | (1,823) | (5,199) | (1,406) | 1,262 | (4,477) | (3,662) | (1,111) | 3,788 | (4,786) | (205) |
| Financing Costs | | (75) | (2,176) | | | | | (2,010) | | | (2,127) | | (50) | | |
| Payouts in lieu of LC's | (1) | | | | | | | | | | | | | | |
| Change in Outstanding Checks | | 4,071 | | | | | | | | | | | | | |
| Consolidated Cash Flow | | 7,420 | (5,972) | 1,318 | (4,916) | (1,823) | (5,199) | (3,417) | 1,262 | (4,477) | (5,849) | (2,238) | 3,788 | (4,766) | (205) |
| **CAPITALIZATION:** | | | | | | | | | | | | | | | |
| GE Securitization | | | | | | | | | | | | | | | |
| Pre-Petition Credit Facility | | | | | | | | | | | | | | | |
| Revolver | | 97,546 | 94,712 | 94,712 | 94,712 | 94,712 | 94,712 | 94,712 | 94,712 | 94,712 | 94,712 | 94,712 | 94,712 | 94,712 | 94,712 |
| Letters of Credit | | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 | 26,243 |
| Total Secured Revolver Outstanding | | 123,789 | 120,955 | 120,955 | 120,955 | 120,955 | 120,955 | 120,955 | 120,955 | 120,955 | 120,955 | 120,955 | 120,955 | 120,955 | 120,955 |
| Term Loan | | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 | 127,135 |
| **Total Pre-Petition Secured Debt** | | 250,924 | 248,090 | 248,090 | 248,090 | 248,090 | 248,090 | 248,090 | 248,090 | 248,090 | 248,090 | 248,090 | 248,090 | 248,090 | 248,090 |
| DIP Revolver | | 18,096 | 18,094 | 18,044 | 43,044 | 24,782 | 29,982 | 33,598 | 32,346 | 36,823 | 40,485 | 43,723 | 39,985 | 44,751 | 44,957 |
| Letters of Credit | | 1,450 | 1,450 | 1,450 | 2,200 | 2,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 |
| Total DIP Outstanding | | 19,362 | 19,362 | 19,494 | 25,159 | 27,462 | 33,182 | 36,798 | 35,546 | 40,023 | 43,685 | 46,923 | 43,185 | 47,951 | 48,157 |
| Fixed DIP Revolver (including LC usage) | | | | | | | | | | | | | | | |
| DIP Term Loan | | | | | | | | | | | | | | | |
| **Total DIP Financing** | | 19,362 | 19,362 | 19,494 | 25,159 | 27,462 | 33,182 | 36,798 | 35,546 | 40,023 | 43,685 | 46,923 | 43,185 | 47,951 | 48,157 |
| **Total Senior Secured Debt** | | 269,026 | 267,452 | 267,584 | 273,249 | 275,572 | 281,272 | 284,888 | 283,636 | 288,113 | 291,775 | 295,013 | 291,275 | 296,041 | 296,247 |
| **LIQUIDITY:** | | | | | | | | | | | | | | | |
| Beginning Cash | | 3,275 | 8,695 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Consolidated Cash Flow | | 2,420 | (5,972) | 1,318 | (4,916) | (1,823) | (5,199) | (3,417) | 1,262 | (4,477) | (5,849) | (2,238) | 3,788 | (4,766) | (205) |
| Cash Available(Shortfall) | | 5,695 | 2,734 | 5,318 | (916) | 2,177 | (1,199) | 583 | 5,252 | (477) | (1,849) | 1,762 | 7,738 | (766) | 3,795 |
| Drawdown / (Paydown) of Revolver | | 3,000 | 1,266 | (1,318) | 4,916 | 1,823 | 5,199 | 3,417 | (1,262) | 4,477 | 5,849 | 2,238 | (3,738) | 4,766 | 205 |
| Ending Cash | | 8,695 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| DIP Revolver Borrowing Base | | 43,438 | 43,732 | 43,044 | 45,789 | 47,163 | 49,910 | 52,196 | 52,799 | 55,786 | 58,585 | 60,420 | 59,227 | 62,501 | 64,545 |
| Borrowing Base Sublimit | | 43,000 | 43,000 | | | | | | | | | | | | |
| DIP Revolver Balance | | (18,096) | (18,044) | (18,044) | (22,959) | (24,782) | (29,982) | (33,598) | (32,346) | (36,823) | (40,485) | (43,723) | (39,985) | (44,751) | (44,957) |
| Real Petition LC's | | (1,450) | (1,450) | (1,450) | (2,200) | (2,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) |
| Revolver Availability | | 24,954 | 23,538 | 23,550 | 20,589 | 19,689 | 16,728 | 15,398 | 17,253 | 15,762 | 14,900 | 13,497 | 16,042 | 14,550 | 16,389 |
| **Liquidity Before Outstanding Checks** | | 33,559 | 27,538 | 27,550 | 24,589 | 23,689 | 20,728 | 19,398 | 21,253 | 19,762 | 18,900 | 17,497 | 20,042 | 18,550 | 20,389 |
| Less: Outstanding Checks | | 6,659 | | | | | | | | | | | | | |
| **Total Liquidity** | | 26,940 | 27,538 | 27,550 | 24,589 | 23,689 | 20,728 | 19,398 | 21,253 | 19,762 | 18,900 | 17,497 | 20,042 | 18,550 | 20,389 |
| **INTEREST COSTS:** | | | | | | | | | | | | | | | |
| Pre-Petition Borrowings: | | | | | | | | | | | | | | | |
| Revolver | 10.00% | | 778 | | | | | 804 | | | 778 | | | | |
| Letters of Credit | 3.50% | | 75 | | | | | 78 | | | 75 | | | | |
| Term Loan | 10.50% | | 1,555 | | | | | 1,627 | | | 1,046 | | | | |
| Accrued Interest | | | 1,899 | | | | | 1,562 | | | 1,899 | | | | |
| Adequate Protection Payments | 2.00% | | 1,366 | | | | | | | | | | | | |
| **Cumulative Accrued Interest** | | 90 | 127 | 28 | 64 | 102 | 148 | 198 | 49 | 104 | 164 | 228 | 59 | 66 | 66 |
| **Payment of Accrued Interest** | | | 127 | | | | | 198 | | | 228 | | | 66 | |
| **DIP Financing:** | | | | | | | | | | | | | | | |
| Revolver | 9.25% | 32 | 34 | 25 | 32 | 35 | 42 | 47 | 45 | 51 | 56 | 61 | 56 | 62 | 63 |
| Fixed Revolver | 7.25% | | | | | | | | | | | | | | |
| Unused Commitment Fee | 0.50% | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Letter of Credit Fee | 3.00% | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| DIP Financing Interest | | 35 | 37 | 28 | 36 | 38 | 46 | 50 | 49 | 55 | 60 | 64 | 59 | 66 | 66 |
| **FINANCING FEES:** | | | | | | | | | | | | | | | |
| Closing Fees | | | 150 | | | | | 50 | | | 50 | | | | |
| Servicing Fee | | | | | | | | | | | | | | | |
| **Total Financing Fees** | | | 150 | | | | | 50 | | | 50 | | | | |

**Notes:**
(1) Some vendors have required deposits due to the inability to offer letters of credit during the interim DIP period; currently $300K is on deposit

*Disclaimer: Numbers are subject to change*

5 / 18

# EAGLEPICHER HOLDINGS, INC.
## Borrowing Base
(US$ in 000's)

**DRAFT**      as of Close of Business 07/22/05
**Confidential**

| | Week Ended 22-Jul | Week Ended 29-Jul | Week Ended 5-Aug | Week Ended 12-Aug | Week Ended 19-Aug | Week Ended 26-Aug | Week Ended 2-Sep | Week Ended 9-Sep | Week Ended 16-Sep | Week Ended 23-Sep | Week Ended 30-Sep | Week Ended 7-Oct | Week Ended 14-Oct | Week Ended 21-Oct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Wolverine** | | | | | | | | | | | | | | |
| Monthly Sales per DIP | | | 5,203 | | | | 5,242 | | | | | 5,485 | 5,496 | |
| Weekly Sales | 894 | 1,216 | 1,131 | 1,131 | 1,131 | 1,131 | 1,155 | 1,191 | 1,191 | 1,191 | 1,191 | 1,306 | 1,306 | 1,306 |
| Beginning AR Balance | 9,690 | 9,573 | 9,197 | 9,380 | 9,465 | 9,475 | 9,082 | 9,559 | 9,628 | 9,678 | 9,657 | 9,696 | 9,716 | 9,846 |
| plus period sales | 894 | 844 | 1,236 | 1,131 | 1,131 | 1,131 | 1,155 | 1,191 | 1,191 | 1,191 | 1,191 | 1,306 | 1,306 | 1,306 |
| less period A/R collections | (944) | (1,562) | (948) | (1,046) | (1,121) | (1,525) | (1,578) | (1,121) | (1,141) | (1,173) | (1,192) | (1,286) | (1,177) | (1,122) |
| less credit memos & misc. adj. | (67) | | | | | | | | | | | | | |
| Ending AR Balance | 9,573 | 9,197 | 9,380 | 9,465 | 9,475 | 9,082 | 9,559 | 9,628 | 9,678 | 9,657 | 9,696 | 9,716 | 9,846 | 10,030 |
| **Hillsdale** | | | | | | | | | | | | | | |
| Monthly Sales per DIP | | | 20,697 | | | | 18,833 | | | | | 16,833 | | |
| Weekly Sales | 3,026 | 2,561 | 4,367 | 4,367 | 4,367 | 4,367 | 4,332 | 4,280 | 4,280 | 4,280 | 4,280 | 4,484 | 4,484 | 4,484 |
| Beginning AR Balance | 30,422 | 28,024 | 29,050 | 27,711 | 31,737 | 34,141 | 37,771 | 40,747 | 40,522 | 44,017 | 47,478 | 49,558 | 46,711 | 50,851 |
| plus period sales | 3,928 | 2,961 | 4,367 | 4,367 | 4,367 | 4,367 | 4,332 | 4,280 | 4,280 | 4,280 | 4,280 | 4,484 | 4,484 | 4,484 |
| less period A/R collections | (1,962) | (1,935) | (5,706) | (341) | (1,962) | | (4,505) | (785) | (820) | (7,332) | (2,199) | (343) | (2,528) | |
| less credit memos & misc. adj. | (2,364) | | | | | | | | | | | | | |
| Ending AR Balance | 28,024 | 29,050 | 27,711 | 31,737 | 34,141 | 37,771 | 40,747 | 40,522 | 44,017 | 47,478 | 49,558 | 46,711 | 50,851 | 52,807 |
| **F&M** | | | | | | | | | | | | | | |
| Monthly Sales per DIP | | | 5,452 | | | | 5,944 | | | | | 5,099 | | |
| Weekly Sales | 678 | 1,179 | 1,185 | 1,185 | 1,185 | 1,185 | 1,242 | 1,328 | 1,328 | 1,328 | 1,328 | 1,214 | 1,214 | 1,214 |
| Beginning AR Balance | 10,505 | 10,084 | 9,819 | 9,712 | 9,567 | 9,815 | 9,428 | 8,988 | 9,005 | 9,333 | 9,662 | 9,990 | 10,218 | 10,132 |
| plus period sales | 678 | 1,179 | 1,185 | 1,185 | 1,185 | 1,185 | 1,242 | 1,328 | 1,328 | 1,328 | 1,328 | 1,214 | 1,214 | 1,214 |
| less period A/R collections | (1,057) | (1,444) | (1,262) | (1,330) | (1,325) | (1,355) | (1,355) | (1,225) | (1,355) | (1,000) | (1,000) | (1,100) | (1,300) | (1,300) |
| less credit memos & misc. adj. | (42) | | | | | | | | | | | | | |
| Ending AR Balance | 10,084 | 9,819 | 9,712 | 9,567 | 9,815 | 9,428 | 8,988 | 9,005 | 9,333 | 9,662 | 9,990 | 10,218 | 10,132 | 10,046 |
| **Technologies** | | | | | | | | | | | | | | |
| Monthly Sales per DIP | | | 13,645 | | | | 13,837 | | | | | 13,564 | | |
| Weekly Sales | 1,848 | 3,065 | 2,967 | 2,967 | 2,967 | 2,967 | 3,047 | 3,168 | 3,168 | 3,168 | 3,168 | 3,325 | 3,325 | 3,325 |
| Beginning AR Balance | 21,845 | 19,352 | 19,421 | 19,022 | 19,815 | 19,737 | 20,281 | 21,192 | 21,996 | 22,731 | 22,733 | 23,708 | 24,840 | 25,710 |
| plus period sales | 1,848 | 3,065 | 2,967 | 2,967 | 2,967 | 2,967 | 3,047 | 3,168 | 3,168 | 3,168 | 3,168 | 3,325 | 3,325 | 3,325 |
| less period A/R collections | (4,341) | (2,996) | (2,766) | (2,714) | (3,044) | (2,423) | (2,363) | (2,363) | (2,433) | (2,954) | (2,844) | (2,252) | (2,455) | (2,150) |
| less credit memos & misc. adj. | | | | | | | | | | | | | | |
| Ending AR Balance | 19,352 | 19,421 | 19,022 | 19,815 | 19,737 | 20,281 | 21,192 | 21,996 | 22,731 | 22,733 | 23,708 | 24,840 | 25,710 | 26,685 |
| **TOTAL AR BALANCE** | 67,033 | 67,488 | 66,426 | 70,585 | 72,782 | 77,021 | 80,503 | 81,480 | 86,088 | 90,408 | 93,240 | 91,369 | 96,453 | 99,607 |
| Less Ineligibles | (13,407) | (13,489) | (13,295) | (14,117) | (14,556) | (15,404) | (16,101) | (16,296) | (17,218) | (18,082) | (18,648) | (18,297) | (19,291) | (19,921) |
| Total Eligble AR | 53,627 | 53,960 | 53,141 | 56,468 | 58,225 | 61,617 | 64,403 | 65,184 | 68,870 | 72,327 | 74,592 | 73,119 | 77,162 | 79,686 |
| Foreign | 5,863 | 5,399 | 5,314 | 5,647 | 5,823 | 6,162 | 6,440 | 6,518 | 6,887 | 7,233 | 7,459 | 7,312 | 7,716 | 7,969 |
| Domestic | 48,264 | 48,561 | 47,827 | 50,821 | 52,403 | 55,455 | 57,962 | 58,666 | 61,983 | 65,094 | 67,133 | 65,807 | 69,446 | 71,717 |
| Advance on Foreign | | | | | | | | | | | | | | |
| Advance on Domestic | | | | | | | | | | | | | | |
| Total Eligible AR Borrowing Base | 43,438 | 43,732 | 43,044 | 45,739 | 47,153 | 49,910 | 52,166 | 52,799 | 55,785 | 58,585 | 60,420 | 59,227 | 62,501 | 64,545 |
| **INVENTORY (per AOP)** | | | | | | | | | | | | | | |
| Eligible Inventory | | | | | | | | | | | | | | |
| Finished Goods | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 | 75,446 |
| Raw Materials | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 | 18,862 |
| | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 | 33,951 |
| Advance on Finished Goods | | | | | | | | | | | | | | |
| less Ineligibles | | | | | | | | | | | | | | |
| Total Eligible Finished Goods | | | | | | | | | | | | | | |
| Advance on Raw Materials | | | | | | | | | | | | | | |
| less Ineligibles | | | | | | | | | | | | | | |
| Total Eligible Raw Materials | | | | | | | | | | | | | | |
| Total Inventory Borrowing Base | | | | | | | | | | | | | | |
| **TOTAL BORROWING BASE** | 43,438 | 43,732 | 43,044 | 45,739 | 47,153 | 49,910 | 52,166 | 52,799 | 55,785 | 58,585 | 60,420 | 59,227 | 62,501 | 64,545 |

**Advance rate notes (Interim / Final):**

| | Interim | Final |
|---|---|---|
| Total Eligble AR | 25.0% | 20.0% |
| Foreign | 10.0% / 90.0% | 10.0% / 90.0% |
| Advance on Foreign / Domestic | 0.0% / 90.0% | 0.0% / 90.0% |
| Finished Goods | 25.0% / 45.0% | 25.0% / 45.0% |
| Raw Materials | 0.0% / 15.0% | 0.0% / 15.0% |
| Advance on Raw Materials | 0.0% / 55.0% | 0.0% / 55.0% |

**Notes:**

Disclaimer: Numbers are subject to change

6 / 18

# WOLVERINE GASKET
## 13-Week Cash Flow Forecast
(US$ in 000's)

DRAFT' Close of Business 07/22/05
*Confidential*

### Forecast (July 22, 2005)

| | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | |
| AR Receipts | $ 1,020 | $ 3,640 | $ 948 | $ 1,046 | $ 1,121 | $ 625 | $ 4,453 | $ 1,122 | $ 1,141 | $ 1,173 | $ 3,027 | $ 1,286 | $ 1,177 | $ 1,122 | $ 7,267 | $ 7,784 | $ 6,872 |
| Non-AR Receipts | | | | | | | | | | | | | | | | | |
| **Total Receipts** | 1,020 | 3,640 | 948 | 1,046 | 1,121 | 625 | 4,453 | 1,122 | 1,141 | 1,173 | 3,027 | 1,286 | 1,177 | 1,122 | 7,287 | 7,784 | 6,872 |
| **Disbursements** | | | | | | | | | | | | | | | | | |
| AP Disbursements | 883 | 833 | 882 | 758 | 794 | 824 | 749 | 799 | 657 | 699 | 837 | 804 | 792 | 754 | 3,787 | 3,460 | 3,636 |
| Critical Vendor Payments | - | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 16 | 49 | 61 |
| COD Payments | | | | | | | | | | | | | | | | | |
| Payroll | 188 | 505 | 195 | 380 | 320 | 195 | 505 | 195 | 500 | 195 | 500 | 195 | 505 | 195 | 1,346 | 1,525 | 1,460 |
| Insurance | | | | | | | | | | | | | | | | | |
| CapEx | | | | | | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | | | | 145 | | |
| Other Disbursements | - | 35 | - | 35 | - | - | - | - | 35 | - | - | - | - | - | 35 | 35 | 35 |
| **Total Disbursements** | 1,071 | 1,385 | 1,189 | 1,185 | 1,126 | 1,031 | 1,266 | 1,006 | 1,204 | 906 | 1,349 | 1,011 | 1,309 | 961 | 5,309 | 5,068 | 5,192 |
| **Division Net Cash Flow** | $ (51) | $ 2,255 | $ (241) | $ (139) | $ (5) | $ (406) | $ 3,187 | $ 116 | $ (63) | $ 267 | $ 1,678 | $ 275 | $ (132) | $ 161 | $ 1,958 | $ 2,716 | $ 1,680 |

**Notes:**

### Forecast (July 15, 2005)

| | Forecast Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | |
| AR Receipts | $ 1,023 | $ 3,322 | $ 1,035 | $ 959 | $ 1,121 | $ 625 | $ 4,453 | $ 1,122 | $ 1,141 | $ 1,173 | $ 3,027 | $ 1,286 | $ 1,258 | $ 1,122 | $ 6,952 | $ 7,784 | $ 6,872 |
| Non-AR Receipts | | | | | | | | | | | | | | | | | |
| **Total Receipts** | 1,023 | 3,322 | 1,035 | 959 | 1,121 | 625 | 4,453 | 1,122 | 1,141 | 1,173 | 3,027 | 1,286 | 1,258 | 1,122 | 6,952 | 7,784 | 6,872 |
| **Disbursements** | | | | | | | | | | | | | | | | | |
| AP Disbursements | 704 | 833 | 882 | 758 | 794 | 824 | 749 | 799 | 657 | 699 | 837 | 804 | 792 | 754 | 3,587 | 3,460 | 3,636 |
| Critical Vendor Payments | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 28 | 49 | 61 |
| COD Payments | | | | | | | | | | | | | | | | | |
| Payroll | 195 | 505 | 195 | 380 | 320 | 195 | 505 | 195 | 500 | 195 | 500 | 195 | 505 | 195 | 1,354 | 1,525 | 1,460 |
| Insurance | | | | | | | | | | | | | | | | | |
| CapEx | | | | | | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | | | | 145 | | |
| Other Disbursements | 35 | - | - | 35 | - | - | - | - | 35 | - | - | - | - | - | 35 | 35 | 35 |
| **Total Disbursements** | 946 | 1,350 | 1,189 | 1,185 | 1,126 | 1,031 | 1,266 | 1,006 | 1,204 | 906 | 1,349 | 1,011 | 1,309 | 1,122 | 5,148 | 5,068 | 5,192 |
| **Division Net Cash Flow** | $ 77 | $ 1,972 | $ (154) | $ (226) | $ (5) | $ (406) | $ 3,187 | $ 116 | $ (63) | $ 267 | $ 1,678 | $ 275 | $ (51) | $ 161 | $ 1,804 | $ 2,716 | $ 1,680 |

### Variance FAV/(UNFAV)

| | Week Ended 22-Jul | Week Ended 29-Jul | Week Ended 5-Aug | Week Ended 12-Aug | Week Ended 19-Aug | Week Ended 26-Aug | Week Ended 2-Sep | Week Ended 9-Sep | Week Ended 16-Sep | Week Ended 23-Sep | Week Ended 30-Sep | Week Ended 7-Oct | Week Ended 14-Oct | Week Ended 21-Oct | Month Ended July | Month Ended August | Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | |
| AR Receipts | $ (3) | $ 318 | $ (87) | $ 87 | - | - | - | - | - | - | - | - | $ (81) | - | $ 315 | $ - | $ - |
| Non-AR Receipts | | | | | | | | | | | | | | | | | |
| **Total Receipts** | (3) | 318 | (87) | 87 | | | | | | | | | (81) | | 315 | | |
| **Disbursements** | | | | | | | | | | | | | | | | | |
| AP Disbursements | (180) | | | | | | | | | | | | | (754) | (180) | | |
| Critical Vendor Payments | 12 | | | | | | | | | | | | | (12) | 12 | | |
| COD Payments | | | | | | | | | | | | | | | | | |
| Payroll | 7 | | | | | | | | | | | | | (195) | 7 | | |
| Insurance | | | | | | | | | | | | | | | | | |
| CapEx | | | | | | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | | | | | | |
| Other Disbursements | 35 | (35) | | | | | | | | | | | | | | | |
| **Total Disbursements** | (125) | (35) | | | | | | | | | | | | (961) | (160) | | |
| **Division Net Cash Flow** | $ (128) | $ 283 | $ (87) | | | | | | | | | | $ (81) | | $ 155 | $ - | $ - |

## WOLVERINE GASKET

**13-Week Cash Flow Forecast**
(US$ in 000's)

DRAFT      as of *Close of Business 07/22/05*

| | Notes | Forecast Week Ended 22-Jul | Actual Week Ended 22-Jul | Variance Forecast vs. Actual | Comments |
|---|---|---|---|---|---|
| **Receipts** | | | | | |
| A/R Receipts | | $ 1,023 | $ 1,020 | $ (3) | |
| Non-A/R Receipts | | - | - | - | |
| **Total Receipts** | | 1,023 | 1,020 | (3) | |
| | | | | | |
| **Disbursements** | | | | | |
| A/P Disbursements | | 704 | 883 | (180) | Acceleration of terms with Worthington |
| Critical Vendor Payments | | 12 | - | 12 | |
| COD Payments | | - | - | - | |
| Payroll | | 195 | 188 | 7 | |
| Insurance | | - | - | - | |
| CapEx | | - | - | - | |
| Professional Fees | | - | - | - | |
| Other Disbursements | | 35 | - | 35 | |
| **Total Disbursements** | | 946 | 1,071 | (125) | |
| | | | | | |
| **Net Cash Flow** | | $ 77 | $ (51) | $ (128) | |

Notes:

# HILLSDALE

**Variance**
(US$ in 000's)

DRAFT   *as of Close of Business 07/22/05*
**Confidential**

## Forecast (July 22, 2005)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | (1) | 2,206 | 1,535 | 5,706 | 341 | 1,962 | 737 | 1,355 | 4,505 | 785 | 820 | 2,199 | 7,332 | 343 | 2,528 | 15,446 | 9,757 | 8,656 |
| Non-A/R Receipts | | 100 | 100 | 100 | 100 | 350 | 100 | 100 | 100 | 100 | 350 | 100 | 100 | 100 | 100 | 100 | 750 | 650 |
| Total Receipts | | 2,206 | 1,635 | 5,806 | 441 | 2,372 | 837 | 1,455 | 4,605 | 885 | 1,170 | 2,299 | 7,432 | 443 | 2,628 | 15,546 | 10,507 | 9,306 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 966 | 1,085 | 1,226 | 951 | 951 | 1,145 | 1,339 | 1,451 | 1,325 | 3,124 | 1,825 | 2,819 | 1,825 | 1,825 | 4,212 | 4,274 | 9,065 |
| Critical Vendor Payments | | - | 135 | 225 | 225 | 225 | 200 | 225 | 90 | - | - | - | - | - | - | 135 | 1,040 | 180 |
| COD Payments | | 829 | 1,814 | 1,300 | 1,300 | 1,300 | 1,350 | 1,300 | - | - | - | - | - | - | - | 4,378 | 5,200 | - |
| Payroll | | 462 | 1,142 | 665 | 1,284 | 574 | 574 | 1,078 | 574 | 1,078 | 574 | 1,078 | 602 | 1,092 | 602 | 2,990 | 4,175 | 3,304 |
| Insurance | | 177 | - | - | - | - | 181 | 181 | - | - | - | - | - | - | - | 177 | 181 | 181 |
| CapEx | | - | 144 | 88 | 332 | 332 | 128 | 44 | 57 | 57 | 57 | 181 | 25 | - | - | 144 | 592 | 272 |
| Professional Fees | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | | |
| Other Disbursements | | 317 | 215 | 315 | 315 | 315 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 962 | 1,145 | 400 |
| Total Disbursements | | 2,751 | 4,535 | 3,819 | 4,119 | 3,697 | 3,658 | 2,786 | 2,272 | 2,560 | 3,855 | 3,241 | 3,546 | 3,017 | 2,527 | 12,798 | 16,806 | 13,402 |
| **Division Net Cash Flow** | | (545) | (2,900) | 1,986 | (3,678) | (1,385) | (2,821) | (1,331) | 2,333 | (1,675) | (2,686) | (942) | 3,885 | (2,574) | 101 | (7,248) | (6,300) | (4,096) |
| **Cumulative Net Cash Flow** | (2) | 9,886 | 6,986 | 8,973 | 5,295 | 3,910 | 1,090 | (241) | 2,092 | 417 | (2,268) | (3,210) | 676 | (1,897) | (1,796) | | | |

## Forecast (July 15, 2005)

| | Notes | Forecast Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | (1) | 2,093 | 552 | 5,585 | 341 | 2,483 | 737 | 1,355 | 4,580 | 838 | 820 | 2,274 | 7,406 | 343 | 2,528 | 14,350 | 10,157 | 8,858 |
| Non-A/R Receipts | | 100 | 100 | 100 | 100 | 350 | 100 | 100 | 100 | 100 | 350 | 100 | 100 | 100 | 100 | 200 | 750 | 650 |
| Total Receipts | | 2,193 | 652 | 5,685 | 441 | 2,833 | 837 | 1,455 | 4,680 | 938 | 1,170 | 2,374 | 7,506 | 443 | 2,628 | 14,550 | 10,907 | 9,508 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 985 | 1,079 | 1,226 | 951 | 951 | 1,145 | 1,339 | 1,451 | 1,325 | 3,124 | 1,825 | 2,819 | 1,825 | 1,825 | 4,225 | 4,274 | 9,065 |
| Critical Vendor Payments | | 225 | 135 | 225 | 225 | 225 | 200 | 225 | 90 | - | - | - | - | - | - | 360 | 995 | - |
| COD Payments | | 1,604 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | - | - | - | - | - | - | - | 4,339 | 5,200 | - |
| Payroll | | 567 | 1,134 | 665 | 1,284 | 574 | 574 | 574 | 574 | 1,078 | 574 | 1,078 | 602 | 1,092 | 602 | 3,087 | 4,175 | 3,304 |
| Insurance | | - | - | - | - | - | 181 | 181 | - | - | - | - | - | - | - | - | 181 | 181 |
| CapEx | | 44 | 144 | - | 44 | 332 | 128 | 44 | 57 | 57 | 57 | 181 | 25 | - | - | 188 | 548 | 272 |
| Professional Fees | | - | - | (44) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Disbursements | | 215 | 215 | 315 | 315 | 315 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 860 | 1,145 | 400 |
| Total Disbursements | | 3,440 | 4,188 | 3,775 | 4,119 | 3,697 | 3,658 | 2,651 | 2,182 | 2,560 | 3,855 | 3,241 | 3,546 | 3,017 | 2,527 | 13,140 | 16,557 | 13,222 |
| **Division Net Cash Flow** | | (1,247) | (3,537) | 1,910 | (3,678) | (864) | (2,821) | (1,196) | 2,498 | (1,622) | (2,686) | (867) | 3,961 | (2,574) | 101 | 1,410 | (5,611) | (3,714) |
| **Cumulative Net Cash Flow** | (2) | 9,184 | 5,648 | | | | | | | | | | | | | | | |

## Variance FAV/(UNFAV)

| | Notes | Week Ended 22-Jul | Week Ended 29-Jul | Week Ended 5-Aug | Week Ended 12-Aug | Week Ended 19-Aug | Week Ended 26-Aug | Week Ended 2-Sep | Week Ended 9-Sep | Week Ended 16-Sep | Week Ended 23-Sep | Week Ended 30-Sep | Week Ended 7-Oct | Week Ended 14-Oct | Week Ended 21-Oct | Month Ended July | Month Ended August | Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | 113 | 983 | 121 | | | | | (75) | (53) | | (75) | (75) | | | (100) | (400) | (202) |
| Non-A/R Receipts | | (100) | | | | | | | | | | | | | | 100 | | |
| Total Receipts | | 13 | 983 | 121 | | (521) | | | (75) | (53) | | (75) | (75) | | | 996 | (405) | (202) |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 19 | (6) | | | | | (135) | (90) | | | | | | (1,825) | 13 | (45) | (140) |
| Critical Vendor Payments | | 225 | (514) | | | | | | | | | | | | | 225 | 61 | |
| COD Payments | | 575 | (8) | | | | | | | | | | | | (602) | 4 | | |
| Payroll | | 105 | 181 | | | | | | | | | | | | | 97 | | |
| Insurance | | (177) | | | | | | | | | | | | | | | 44 | (44) |
| CapEx | | 44 | 144 | (44) | | | | | | | | | | | | 44 | (44) | |
| Professional Fees | | | | | | | | | | | | | | | | | | |
| Other Disbursements | | (102) | (347) | 77 | | | | | | | | | | | (100) | (102) | | |
| Total Disbursements | | 689 | 696 | | | (521) | | (135) | (90) | (53) | | (75) | (75) | | (2,527) | 342 | (89) | (180) |
| **Division Net Cash Flow** | | 702 | 1,338 | | | | | | | | | | | | | | | |
| **Cumulative Net Cash Flow** | (2) | 702 | 1,338 | | | | | | | | | | | | | | | |

**Notes:**
(1) Non-A/R receipts include scrap material sales
(2) Per the Fourth Amendment; cumulative net cash flow for Hillsdale will be calculated from (and including) May 16, 2005 through the termination of the final DIP

Disclaimer: Numbers are subject to change

EaglePicher_DIP/July 22, 2005_072705

# HILLSDALE

**Variance**

(US$ in 000's)

DRAFT          as of Close of Business 07/22/05

| | Notes | Forecast Week Ended 22-Jul | Actual Week Ended 22-Jul | Variance Forecast vs. Actual | Comments |
|---|---|---|---|---|---|
| **Receipts** | | | | | |
| A/R Receipts | | $ 2,093 | $ 2,206 | 113 | Timing of Caterpillar payment |
| Non-A/R Receipts | | 100 | - | (100) | No EFTEC wire |
| **Total Receipts** | | 2,193 | 2,206 | 13 | |
| **Disbursements** | | | | | |
| A/P Disbursements | | 985 | 966 | 19 | |
| Critical Vendor Payments | | 225 | - | 225 | Timing |
| COD Payments | | 1,404 | 829 | 575 | Timing ; GradeMIT less than expected |
| Payroll | | 567 | 462 | 105 | Overestimated vacation during shut-down period |
| Insurance | | - | 177 | (177) | Timing ; paid week of July 15 |
| CapEx | | 44 | - | 44 | |
| Professional Fees | | - | - | - | |
| Other Disbursements | | 215 | 317 | (102) | Underestimated |
| **Total Disbursements** | | 3,440 | 2,751 | 689 | |
| **Net Cash Flow** | | $ (1,247) | $ (545) | 702 | |

**Notes:**

# FILTRATION & MINERALS
## 13-Week Cash Flow Forecast
(US$ in 000's)

DRAFT  as of Close of Business 07/22/05
Confidential

### Forecast (July 22, 2005)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | 2,139 | 1,444 | 1,946 | 1,330 | 1,745 | 1,625 | 2,185 | 1,000 | 1,000 | 1,360 | 1,100 | 1,940 | 1,300 | 1,735 | 5,863 | 7,071 | 6,220 |
| Non-A/R Receipts | | | | | | | | | | | | | | | | | | |
| **Total Receipts** | | 2,139 | 1,444 | 1,946 | 1,330 | 1,745 | 1,625 | 2,185 | 1,000 | 1,000 | 1,360 | 1,100 | 1,940 | 1,300 | 1,735 | 5,863 | 7,071 | 6,220 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| AP Disbursements | | 1,922 | 967 | 1,163 | 1,140 | 1,140 | 1,140 | 1,150 | 1,000 | 1,000 | 1,000 | 1,000 | 1,100 | 1,100 | 1,000 | 5,098 | 4,733 | 5,000 |
| Critical Vendor Payments | | | 75 | 75 | 49 | 49 | 49 | 16 | | | | | | | | 130 | 248 | 65 |
| COD Payments | | | 40 | 40 | | | | | | | | | 39 | 40 | | 39 | 40 | |
| Payroll | | 254 | | 176 | 357 | 176 | 86 | 447 | 86 | 447 | 86 | 447 | 86 | 447 | 86 | 1,215 | 1,151 | 1,156 |
| Insurance | | | | | | | | | | | | | | | | | | |
| CapEx | | 148 | 80 | 125 | 111 | 55 | 35 | 100 | 135 | 115 | 100 | 100 | 75 | 95 | | 256 | 300 | 596 |
| Professional Fees | | | | | | | | | | | | | | | 150 | | | |
| Other Disbursements | | | | | | | | | | | | | | | | | | |
| **Total Disbursements** | | 2,324 | 1,404 | 1,579 | 1,657 | 1,420 | 1,310 | 1,758 | 1,237 | 1,571 | 1,201 | 1,547 | 1,261 | 1,642 | 1,236 | 6,669 | 6,433 | 6,807 |
| **Division Net Cash Flow** | | (186) | 40 | 367 | (327) | 325 | 315 | 427 | (237) | (571) | 159 | (447) | 679 | (342) | 499 | (807) | 638 | (587) |

Notes:

### Forecast (July 15, 2005)

| | Notes | Week Ended 22-Jul | Week Ended 29-Jul | Week Ended 5-Aug | Week Ended 12-Aug | Week Ended 19-Aug | Week Ended 26-Aug | Week Ended 2-Sep | Week Ended 9-Sep | Week Ended 16-Sep | Week Ended 23-Sep | Week Ended 30-Sep | Week Ended 7-Oct | Week Ended 14-Oct | Week Ended 21-Oct | Month July | Month August | Month Sept. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | 1,417 | 2,815 | 1,292 | 1,930 | 1,325 | 1,625 | 1,725 | 1,000 | 1,500 | 1,000 | 1,700 | 1,300 | 1,300 | | 6,512 | 7,097 | 6,000 |
| Non-A/R Receipts | | | | | | | | | | | | | | | | | | |
| **Total Receipts** | | 1,417 | 2,815 | 1,292 | 1,930 | 1,325 | 1,625 | 1,725 | 1,000 | 1,500 | 1,000 | 1,700 | 1,300 | 1,300 | | 6,512 | 7,097 | 6,000 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| AP Disbursements | | 1,519 | 1,113 | 1,367 | 1,140 | 1,140 | 1,140 | 1,150 | 1,000 | 1,000 | 1,000 | 1,000 | 1,100 | 1,100 | | 4,811 | 4,937 | 5,000 |
| Critical Vendor Payments | | 75 | 75 | 49 | 49 | 49 | 16 | | | | | | | | | 205 | 222 | 16 |
| COD Payments | | 40 | 40 | | | | | | | | | | 39 | 40 | | 39 | 40 | |
| Payroll | | 232 | | 176 | 357 | 176 | 86 | 447 | 86 | 447 | 86 | 447 | 86 | 447 | | 1,193 | 1,151 | 1,156 |
| Insurance | | | | | | | | | | | | | | | | | | |
| CapEx | | 75 | 90 | 125 | 100 | 50 | 50 | 100 | 100 | 100 | 100 | | 75 | | | 193 | 325 | 500 |
| Professional Fees | | | 10 | | | (5) | | | | (15) | | | | (20) | | (63) | 25 | (80) |
| Other Disbursements | | | | | | | | | | | | | | | | | | |
| **Total Disbursements** | | 1,826 | 1,639 | 1,783 | 1,646 | 1,415 | 1,325 | 1,713 | 1,186 | 1,547 | 1,196 | 1,547 | 1,261 | 1,622 | | 6,407 | 6,606 | 6,672 |
| **Division Net Cash Flow** | | (409) | 1,176 | (491) | 284 | (90) | 300 | 12 | (186) | (47) | (196) | 153 | 39 | (322) | | 105 | 461 | (672) |

### Variance FAV/(UNFAV)

| | Notes | Week Ended 22-Jul | Week Ended 29-Jul | Week Ended 5-Aug | Week Ended 12-Aug | Week Ended 19-Aug | Week Ended 26-Aug | Week Ended 2-Sep | Week Ended 9-Sep | Week Ended 16-Sep | Week Ended 23-Sep | Week Ended 30-Sep | Week Ended 7-Oct | Week Ended 14-Oct | Week Ended 21-Oct | Month July | Month August | Month Sept. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | 722 | (1,371) | 654 | (600) | 420 | | 460 | | (500) | 360 | (600) | 640 | | 1,735 | (649) | (26) | 220 |
| Non-A/R Receipts | | | | | | | | | | | | | | | | | | |
| **Total Receipts** | | 722 | (1,371) | 654 | (600) | 420 | | 460 | | (500) | 360 | (600) | 640 | | 1,735 | (649) | (26) | 220 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| AP Disbursements | | (403) | 146 | 204 | | | | | | | | | | | (1,000) | (257) | 204 | (49) |
| Critical Vendor Payments | | | | | | | | | | | | | | | | 75 | (26) | (49) |
| COD Payments | | | | | | | | | | | | | | | (88) | | | |
| Payroll | | (22) | | | | | | | | | | | | | (150) | (22) | | |
| Insurance | | | | | | | | | | | | | | | | | | |
| CapEx | | (73) | 10 | | (11) | (5) | 15 | | (12) | (35) | (15) | | | (20) | | (63) | 25 | (96) |
| Professional Fees | | | | | | | | | | | | | | | | | | |
| Other Disbursements | | | | | | | | | | | | | | | | | | |
| **Total Disbursements** | | (498) | 235 | 204 | (11) | (5) | 15 | (45) | (51) | (24) | (15) | (15) | | (20) | (1,236) | (283) | 203 | (135) |
| **Division Net Cash Flow** | | 224 | (1,136) | 858 | (611) | 415 | 15 | 415 | (51) | (524) | 345 | (600) | 640 | (322) | 499 | (912) | 177 | 85 |

# FILTRATION & MINERALS

**Variance**
(US$ in 000's)

DRAFT          *as of Close of Business 07/22/05*

| | Notes | Forecast Week Ended 22-Jul | Actual Week Ended 22-Jul | Variance Forecast vs. Actual | Comments |
|---|---|---|---|---|---|
| **Receipts** | | | | | |
| A/R Receipts | | $ 1,417 | $ 2,139 | $ 722 | Timing - EPFM Europe |
| Non-A/R Receipts | | - | - | - | |
| **Total Receipts** | | 1,417 | 2,139 | 722 | |
| | | | | | |
| **Disbursements** | | | | | |
| A/P Disbursements | | 1,519 | 1,922 | (403) | Timing |
| Critical Vendor Payments | | - | - | - | |
| COD Payments | | - | - | - | |
| Payroll | | 232 | 254 | (22) | |
| Insurance | | - | - | - | |
| CapEx | | 75 | 148 | (73) | |
| Professional Fees | | - | - | - | |
| Other Disbursements | | - | - | - | |
| **Total Disbursements** | | 1,826 | 2,324 | (498) | |
| | | | | | |
| **Net Cash Flow** | | $ (409) | $ (185) | $ 224 | |

**Notes:**

# TECHNOLOGIES (1)

**13-Week Cash Flow Forecast**
(US$ in 000's)

DRAFT    as of Close of Business 07/22/2005

**Confidential**

## Forecast (July 22, 2005)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | $ 3,969 | $ 2,150 | $ 2,416 | $ 2,531 | $ 2,451 | $ 2,003 | $ 1,582 | $ 1,927 | $ 2,016 | $ 2,223 | $ 2,272 | $ 1,856 | $ 2,005 | $ 1,675 | $ 10,286 | $ 10,701 | $ 8,720 |
| Non-A/R Receipts | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Receipts | | 3,969 | 2,150 | 2,416 | 2,531 | 2,451 | 2,003 | 1,582 | 1,927 | 2,016 | 2,223 | 2,272 | 1,856 | 2,005 | 1,675 | 10,286 | 10,701 | 8,720 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 1,140 | 1,301 | 1,232 | 1,206 | 1,400 | 1,150 | 1,225 | 1,460 | 1,460 | 775 | 775 | 1,325 | 1,325 | 1,325 | 4,561 | 4,988 | 5,695 |
| Critical Vendor Payments | | 107 | 143 | 3 | 3 | 3 | - | - | - | - | - | - | - | - | - | 587 | 6 | - |
| COD Payments | | 73 | 410 | 265 | 60 | 60 | 60 | 60 | 260 | 60 | 60 | 60 | 50 | 60 | 50 | 634 | 485 | 450 |
| Payroll | | 288 | 1,415 | 327 | 930 | 812 | 327 | 1,415 | 327 | 1,415 | 327 | 1,423 | 327 | 1,415 | 327 | 3,341 | 3,693 | 3,609 |
| Insurance | | - | 48 | - | - | - | - | 48 | - | - | - | 48 | - | 48 | 48 | 96 | 48 | 48 |
| CapEx | | - | 159 | - | - | - | 100 | - | - | - | - | - | 82 | - | - | 159 | 100 | - |
| Professional Fees | | - | - | - | - | - | - | - | - | - | - | - | - | - | 79 | - | - | - |
| Other Disbursements | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Disbursements | | 1,608 | 3,476 | 1,827 | 2,199 | 2,272 | 1,637 | 2,748 | 2,047 | 2,935 | 1,182 | 2,306 | 1,784 | 2,848 | 1,781 | 9,397 | 9,330 | 9,802 |
| Division Net Cash Flow | | $ 2,362 | $ (1,326) | $ 589 | $ 332 | $ 179 | $ 366 | $ (1,167) | $ (119) | $ (919) | $ 1,061 | $ (34) | $ 72 | $ (843) | $ (106) | $ 889 | $ 1,370 | $ (1,082) |

## Forecast (July 15, 2005)

| | Notes | Forecast Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | $ 3,962 | $ 2,218 | $ 2,653 | $ 2,539 | $ 2,373 | $ 1,540 | $ 1,160 | $ 1,627 | $ 1,871 | $ 2,223 | $ 2,272 | $ 1,856 | $ 2,005 | $ 1,675 | $ 10,047 | $ 10,089 | $ 8,169 |
| Non-A/R Receipts | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Receipts | | 3,962 | 2,218 | 2,653 | 2,539 | 2,373 | 1,540 | 1,160 | 1,627 | 1,871 | 2,223 | 2,272 | 1,856 | 2,005 | 1,675 | 10,047 | 10,089 | 8,169 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 1,400 | 1,180 | 1,175 | 1,150 | 1,600 | 1,150 | 1,225 | 1,460 | 1,460 | 775 | 775 | 1,325 | 1,325 | 1,325 | 4,720 | 4,875 | 5,695 |
| Critical Vendor Payments | | 222 | 28 | - | 3 | 3 | - | - | - | - | - | - | - | - | - | 587 | 6 | - |
| COD Payments | | 115 | 419 | 115 | 115 | - | - | 260 | 60 | 60 | 260 | 60 | 50 | 60 | 50 | 660 | 545 | 450 |
| Payroll | | 327 | 1,415 | 327 | 930 | 812 | 327 | 1,415 | 327 | 1,415 | 327 | 1,423 | 327 | 1,415 | 327 | 3,379 | 3,693 | 3,609 |
| Insurance | | 38 | 48 | - | - | - | - | 48 | - | - | - | 48 | - | 48 | 48 | 96 | 48 | 48 |
| CapEx | | - | 159 | - | - | - | 100 | - | - | - | - | - | 82 | - | - | 159 | 100 | - |
| Professional Fees | | - | - | - | - | - | - | - | - | - | - | - | - | - | 79 | - | - | - |
| Other Disbursements | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Disbursements | | 2,058 | 3,249 | 1,620 | 2,143 | 2,272 | 1,637 | 2,948 | 1,847 | 2,935 | 1,362 | 2,306 | 1,784 | 2,848 | 1,781 | 9,621 | 9,267 | 9,802 |
| Division Net Cash Flow | | $ 1,903 | $ (1,031) | $ 1,033 | $ 396 | $ 101 | $ (97) | $ (1,788) | $ (220) | $ (1,064) | $ 861 | $ (34) | $ 72 | $ (843) | $ (106) | $ 426 | $ 822 | $ (1,633) |

## Variance FAV/(UNFAV)

| | Notes | Week Ended 22-Jul | Week Ended 29-Jul | Week Ended 5-Aug | Week Ended 12-Aug | Week Ended 19-Aug | Week Ended 26-Aug | Week Ended 2-Sep | Week Ended 9-Sep | Week Ended 16-Sep | Week Ended 23-Sep | Week Ended 30-Sep | Week Ended 7-Oct | Week Ended 14-Oct | Week Ended 21-Oct | Month Ended July | Month Ended August | Month Ended Sept. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | $ 308 | $ (68) | $ (237) | $ (8) | $ 78 | $ 463 | $ 421 | $ 301 | $ 145 | $ - | $ - | $ - | $ - | $ - | $ 240 | $ 611 | $ 551 |
| Non-A/R Receipts | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Receipts | | 308 | (68) | (237) | (8) | 78 | 463 | 421 | 301 | 145 | - | - | - | - | - | 240 | 611 | 551 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 260 | (121) | (57) | (56) | - | - | - | - | - | - | - | - | - | - | 139 | (113) | - |
| Critical Vendor Payments | | 115 | (116) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| COD Payments | | 37 | 9 | (150) | - | - | - | - | 200 | - | 200 | - | - | 50 | (50) | 46 | 50 | - |
| Payroll | | 38 | - | - | - | - | - | - | - | - | - | - | - | - | (327) | 38 | - | - |
| Insurance | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| CapEx | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees | | - | - | - | - | - | - | - | - | - | - | - | - | - | (79) | - | - | - |
| Other Disbursements | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Disbursements | | 451 | (227) | (207) | (56) | - | - | 200 | (200) | - | (200) | - | - | - | (1,781) | 223 | (63) | - |
| Division Net Cash Flow | | $ 758 | $ (295) | $ (444) | $ (64) | $ 78 | $ 463 | $ 621 | $ 101 | $ 145 | $ 200 | $ - | $ - | $ - | $ (106) | $ 463 | $ 548 | $ 551 |

**Notes:**
(1) Composed of Government Power and Boron
(2) Per the Second Amendment, EagleRicher Energy Products (EPEP) has been excluded from the forecast.  No further loans have been, nor will be made from EP to EPEP

# TECHNOLOGIES [1]

## Variance
(US$ in 000's)

DRAFT      as of Close of Business 07/22/05

| | Notes | Forecast Week Ended 22-Jul | Actual Week Ended 22-Jul | Variance Forecast vs. Actual | Comments |
|---|---|---|---|---|---|
| **Receipts** | | | | | |
| A/R Receipts | | $ 3,662 | $ 3,969 | $ 308 | Receipt at Boron $800K offset by DSP timing of ($500K) |
| Non-A/R Receipts | | - | - | - | |
| **Total Receipts** | | 3,662 | 3,969 | 308 | |
| **Disbursements** | | | | | |
| A/P Disbursements | | 1,400 | 1,140 | 260 | |
| Critical Vendor Payments | | 222 | 107 | 115 | Timing |
| COD Payments | | 110 | 73 | 37 | Timing |
| Payroll | | 327 | 288 | 38 | |
| Insurance | | - | - | - | |
| CapEx | | - | - | - | |
| Professional Fees | | - | - | - | |
| Other Disbursements | | - | - | - | |
| **Total Disbursements** | | 2,058 | 1,608 | 451 | |
| **Net Cash Flow** | | $ 1,603 | $ 2,362 | $ 758 | |

**Notes:**
(1) Comprised of Government Power and Boron.

7/27/2005

EaglePicher_DIP/July 22)_072705

14 / 18

# COMMERCIAL POWER SOLUTIONS [1]

**13-Week Cash Flow Forecast**
(US$ in 000's)

DRAFT                as of Close of Business 07/22/05

*Confidential*

## Forecast (July 22, 2005)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | $ 843 | $ 410 | $ 646 | $ 425 | $ 593 | $ 420 | $ 554 | $ 436 | $ 417 | $ 431 | $ 372 | $ 396 | $ 450 | $ 475 | $ 1,659 | $ 2,538 | $ 1,756 |
| Non-A/R Receipts | (2) | | | | | | | | | | | | | 485 | | | | |
| **Total Receipts** | | 843 | 410 | 646 | 425 | 593 | 420 | 554 | 436 | 417 | 431 | 372 | 396 | 935 | 475 | 1,659 | 2,538 | 1,756 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 248 | 215 | 70 | 438 | 527 | 202 | 252 | 258 | 209 | 393 | 168 | 325 | 250 | 450 | 890 | 1,037 | 1,280 |
| Critical Vendor Payments | | 9 | 12 | 10 | 12 | 12 | 12 | 12 | 11 | 11 | 1 | 1 | | | | 39 | 50 | 23 |
| COD Payments | | 20 | 5 | 15 | 5 | 5 | 5 | | | | | | | | | 28 | 25 | - |
| Payroll | | 10 | 307 | 17 | 233 | 90 | 17 | 306 | 17 | 306 | 17 | 306 | 17 | 317 | 17 | 629 | 656 | 653 |
| Insurance | | | | | | | | | | | | | | | | | | |
| CapEx | | 2 | | 51 | 47 | 82 | 23 | | | | | | | | | 2 | 203 | 89 |
| Professional Fees | (2) | | 33 | | | | | | | 27 | 62 | 90 | | | 17 | 33 | | 90 |
| Other Disbursements | | | | | | | | | | | | | | | | | | |
| **Total Disbursements** | | 289 | 572 | 163 | 727 | 516 | 254 | 570 | 296 | 553 | 473 | 564 | 342 | 567 | 467 | 1,619 | 1,971 | 2,135 |
| **Division Net Cash Flow** | | $ 554 | $ (162) | $ 483 | $ (302) | $ 77 | $ 166 | $ (16) | $ 150 | $ (136) | $ (42) | $ (192) | $ 54 | $ 368 | $ 8 | $ 40 | $ 567 | $ (379) |

### Notes:
(1) Consists of Pharmaceutical Services, Distributed Power, and Commercial Power Headquarters.
(2) Executive relocation activity involving sale of house, advance expected during week of June 3, with repayment projected for week of July 29.

## Forecast (July 15, 2005)

| | Notes | Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | $ 955 | $ 590 | $ 484 | $ 507 | $ 598 | $ 525 | $ 473 | $ 431 | $ 417 | $ 431 | $ 372 | $ 396 | $ 400 | $ 475 | $ 1,951 | $ 2,487 | $ 1,751 |
| Non-A/R Receipts | (2) | | | | | | | 485 | | | | | | | | | | 485 |
| **Total Receipts** | | 955 | 590 | 484 | 507 | 598 | 525 | 958 | 431 | 417 | 431 | 372 | 396 | 400 | 475 | 1,951 | 2,487 | 2,236 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 286 | 435 | 278 | 229 | 244 | 188 | 150 | 360 | 209 | 393 | 168 | 325 | 250 | | 1,148 | 939 | 1,280 |
| Critical Vendor Payments | | 9 | 9 | 7 | 4 | 12 | 12 | 12 | 11 | 11 | 1 | 1 | | | | 36 | 47 | 23 |
| COD Payments | | 21 | 5 | 10 | 5 | 5 | | | | | | | | | | 27 | 20 | - |
| Payroll | | 17 | 314 | 17 | 241 | 90 | 17 | 314 | 17 | 350 | 17 | 350 | 17 | 365 | | 643 | 672 | 741 |
| Insurance | | | | | | | | | | | | | | | | | | |
| CapEx | | 113 | | 14 | 64 | 84 | | | | | | | | | | 185 | 162 | 89 |
| Professional Fees | (2) | | 72 | | | | | | | 27 | 62 | | | | | 33 | 90 | 90 |
| Other Disbursements | | | 33 | | | 90 | | | | | | | | | | | | |
| **Total Disbursements** | | 446 | 868 | 326 | 543 | 525 | 217 | 476 | 388 | 597 | 473 | 518 | 342 | 615 | | 2,072 | 1,930 | 2,133 |
| **Division Net Cash Flow** | | $ 508 | $ (278) | $ 158 | $ (36) | $ 73 | $ 308 | $ 482 | $ 43 | $ (180) | $ (42) | $ (146) | $ 54 | $ (215) | $ - | $ (121) | $ 557 | $ 103 |

## Variance FAV/(UNFAV)

| | Notes | Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | $ (112) | $ (180) | $ 162 | $ (82) | $ (5) | $ (105) | $ 81 | $ 5 | $ - | $ - | $ - | $ - | $ 50 | $ 475 | $ (292) | $ 51 | $ 5 |
| Non-A/R Receipts | (2) | | | | | | | (485) | | | | | | 485 | | | | (485) |
| **Total Receipts** | | (112) | (180) | 162 | (82) | (5) | (105) | (404) | 5 | - | - | - | - | 535 | 475 | (292) | 51 | (480) |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 38 | 220 | 208 | (209) | (83) | (14) | (102) | 102 | | | | | | (450) | 258 | (98) | - |
| Critical Vendor Payments | | 1 | (3) | (3) | | | | | | | | | | | (3) | (3) | (3) |
| COD Payments | | 1 | | (5) | | | | | | | | | | | | (0) | (5) | - |
| Payroll | | 7 | 7 | | 8 | | | 6 | | 44 | | 44 | | 48 | (17) | 14 | 16 | 88 |
| Insurance | | | | | | | | | | | | | | | | | | |
| CapEx | | 111 | 72 | (37) | 17 | 2 | (23) | | | | | | | | | 183 | (41) | - |
| Professional Fees | (2) | | | | | | | | | | | | | | | | | |
| Other Disbursements | | | 33 | | | | | | | (90) | | (90) | | | | 90 | (90) | |
| **Total Disbursements** | | 157 | 296 | 163 | (184) | 9 | (37) | (94) | 102 | 44 | - | (46) | - | 48 | (467) | 453 | (41) | 90 |
| **Division Net Cash Flow** | | $ 45 | $ 116 | $ 325 | $ (266) | $ 4 | $ (142) | $ (498) | $ 107 | $ 44 | $ - | $ (46) | $ - | $ 583 | $ 8 | $ 161 | $ 10 | $ (410) |

Disclaimer: Numbers are subject to change

15 / 18

EaglePicher_DIPJuly 22J_072705

# COMMERCIAL POWER SOLUTIONS [1]

**Variance**
(US$ in 000's)

DRAFT        as of Close of Business 07/22/05

| | Notes | Forecast Week Ended 22-Jul | Actual Week Ended 22-Jul | Variance Forecast vs. Actual | Comments |
|---|---|---|---|---|---|
| **Receipts** | | | | | |
| A/R Receipts | | $ 955 | $ 843 | $ (112) | ($556) Pharma - timing ; $3K variance DP - permanent |
| Non-A/R Receipts | | - | - | - | |
| **Total Receipts** | | 955 | 843 | (112) | |
| | | | | | |
| **Disbursements** | | | | | |
| A/P Disbursements | | 286 | 248 | 38 | |
| Critical Vendor Payments | | 9 | 9 | - | |
| COD Payments | | 21 | 20 | 1 | |
| Payroll | | 17 | 10 | 7 | |
| Insurance | | - | - | - | |
| CapEx | | 113 | 2 | 111 | Timing shift - Primarily Pharma |
| Professional Fees | | - | - | - | |
| Other Disbursements | | - | - | - | |
| **Total Disbursements** | | 446 | 289 | 157 | |
| | | | | | |
| **Net Cash Flow** | | $ 509 | $ 554 | $ 45 | |

**Notes:**
(1) Consists of Pharmaceutical Services, Distributed Power, and Commercial Power Headquarters

7/27/2005

EaglePicher_DIP/July 22\_072705

# EAGLEPICHER HOLDINGS, INC. (HEADQUARTERS)

DRAFT *as of Close of Business 07/22/05*

**13-Week Cash Flow Forecast**
(US$ in 000's)

***Confidential***

## Forecast (July 22, 2005)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Non-A/R Receipts | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 244 | 349 | 200 | 193 | 160 | 160 | 180 | 120 | 240 | 110 | 130 | 215 | 175 | 175 | 697 | 713 | 780 |
| Critical Vendor Payments | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| COD Payments | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | | 862 | 464 | 320 | 209 | 425 | 209 | 174 | 320 | 314 | 269 | 314 | 269 | 314 | 269 | 1,851 | 1,268 | 1,286 |
| Insurance | | 487 | 486 | 860 | 400 | 430 | 475 | 2,045 | 400 | 400 | 400 | 505 | 575 | 400 | 400 | 1,692 | 2,565 | 3,350 |
| CapEx | | - | - | 131 | - | - | - | 8 | 1 | 59 | 119 | - | 120 | 154 | 25 | 206 | 131 | 188 |
| Management Expenses | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees | | 2,117 | 244 | 356 | - | - | 1,876 | - | - | - | 1,474 | - | - | - | - | 2,361 | 2,232 | 1,474 |
| Legal Fees, Claims, etc. | | - | 25 | - | - | - | - | 25 | - | - | - | 25 | - | - | - | 25 | 25 | 25 |
| Hedging - loss/(gain) | | - | 125 | - | - | - | - | - | - | - | - | - | - | - | - | 125 | - | - |
| Investments in JV Companies | | - | - | - | - | - | 100 | 75 | 150 | 100 | 50 | 200 | - | 200 | - | - | 100 | 575 |
| Other Disbursements | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Disbursements** | | 3,710 | 1,693 | 1,867 | 802 | 1,015 | 2,820 | 2,507 | 991 | 1,113 | 2,422 | 1,174 | 1,179 | 1,243 | 869 | 6,957 | 7,034 | 7,678 |
| **Net Cash Flow** | | $ (3,710) | $ (1,693) | $ (1,867) | $ (802) | $ (1,015) | $ (2,820) | $ (2,507) | $ (991) | $ (1,113) | $ (2,422) | $ (1,174) | $ (1,179) | $ (1,243) | $ (869) | $ (6,957) | $ (7,034) | $ (7,678) |

Notes:

## Forecast (July 15, 2005)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | $ - | $ - | $ - |
| Non-A/R Receipts | | - | - | - | - | - | - | - | - | - | - | - | - | - | | - | - | - |
| **Total Receipts** | | - | - | - | - | - | - | - | - | - | - | - | - | - | | - | - | - |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 393 | 200 | 200 | 193 | 160 | 160 | 180 | 120 | 240 | 110 | 130 | 215 | 175 | | 697 | 713 | 780 |
| Critical Vendor Payments | | - | - | - | - | - | - | - | - | - | - | - | - | - | | - | - | - |
| COD Payments | | - | - | - | - | - | - | - | - | - | - | - | - | - | | - | - | - |
| Payroll | | 494 | 464 | 320 | 209 | 425 | 209 | 174 | 320 | 314 | 269 | 314 | 269 | 314 | | 1,483 | 1,268 | 1,286 |
| Insurance | | 793 | 520 | 575 | 400 | 430 | 475 | 2,045 | 400 | 400 | 400 | 505 | 575 | 400 | | 2,032 | 2,280 | 3,350 |
| CapEx | | - | 25 | 131 | 8 | - | - | 34 | 1 | 35 | 119 | - | 120 | 119 | | 231 | 139 | 189 |
| Professional Fees | | 2,521 | - | - | - | - | 1,928 | - | - | - | 1,512 | - | - | - | | 2,521 | 1,928 | 1,512 |
| Legal Fees, Claims, etc. | | - | 25 | - | - | - | - | 25 | - | - | - | 25 | - | - | | 25 | 25 | 25 |
| Hedging - loss/(gain) | | - | 125 | - | - | - | - | - | - | - | - | - | - | - | | 125 | - | - |
| Investments in JV Companies | | 470 | 470 | 40 | 40 | 90 | 140 | 230 | 120 | 120 | 120 | 100 | 100 | 100 | | 939 | 500 | 500 |
| Other Disbursements | | - | - | - | - | - | - | - | - | - | - | - | - | - | | - | - | - |
| **Total Disbursements** | | 4,671 | 1,829 | 1,266 | 850 | 1,105 | 2,912 | 2,688 | 961 | 1,109 | 2,530 | 1,074 | 1,279 | 1,108 | | 8,053 | 6,853 | 7,642 |
| **Net Cash Flow** | | $ (4,671) | $ (1,829) | $ (1,266) | $ (850) | $ (1,105) | $ (2,912) | $ (2,688) | $ (961) | $ (1,109) | $ (2,530) | $ (1,074) | $ (1,279) | $ (1,108) | | $ (8,053) | $ (6,853) | $ (7,642) |

## Variance FAV(UNFAV)

| | Notes | Actual Week Ended 22-Jul | Forecast Week Ended 29-Jul | Forecast Week Ended 5-Aug | Forecast Week Ended 12-Aug | Forecast Week Ended 19-Aug | Forecast Week Ended 26-Aug | Forecast Week Ended 2-Sep | Forecast Week Ended 9-Sep | Forecast Week Ended 16-Sep | Forecast Week Ended 23-Sep | Forecast Week Ended 30-Sep | Forecast Week Ended 7-Oct | Forecast Week Ended 14-Oct | Forecast Week Ended 21-Oct | Forecast Month Ended July | Forecast Month Ended August | Forecast Month Ended Sept. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | |
| A/R Receipts | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Non-A/R Receipts | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| A/P Disbursements | | 149 | (149) | - | - | - | - | - | - | - | - | - | - | - | (175) | - | - | - |
| Critical Vendor Payments | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| COD Payments | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | | (368) | - | - | - | - | - | - | - | - | - | - | - | - | (269) | (368) | - | - |
| Insurance | | 306 | 34 | (285) | - | - | - | - | - | - | - | - | - | - | (400) | 340 | (285) | - |
| CapEx | | - | 25 | - | 8 | - | - | 26 | - | (24) | - | - | - | (35) | (25) | 25 | 8 | 2 |
| Professional Fees | | 404 | (244) | (356) | - | - | 52 | - | - | - | 38 | - | - | - | - | 161 | (304) | 38 |
| Legal Fees, Claims, etc. | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hedging - loss/(gain) | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Investments in JV Companies | | 470 | 470 | 40 | 40 | 90 | 40 | 155 | (30) | 20 | 70 | (100) | 100 | (100) | - | 939 | 400 | (75) |
| Other Disbursements | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Disbursements** | | 961 | 136 | (601) | 48 | 90 | 92 | 181 | (30) | (4) | 108 | (100) | 100 | (135) | (869) | 1,097 | (181) | (35) |
| **Net Cash Flow** | | $ 961 | $ 136 | $ (601) | $ 48 | $ 90 | $ 92 | $ 181 | $ (30) | $ (4) | $ 108 | $ (100) | $ 100 | $ (135) | $ (869) | $ 1,097 | $ (181) | $ (35) |

EAGLEPICHER HOLDINGS, INC. (HEADQUARTERS)          DRAFT          *as of Close of Business 07/22/05*

**Variance**
(US$ in 000's)

| | Notes | Forecast Week Ended 22-Jul | Actual Week Ended 22-Jul | Variance Forecast vs. Actual | Comments |
|---|---|---|---|---|---|
| **Receipts** | | | | | |
| A/R Receipts | | $  - | $  - | $  - | |
| Non-A/R Receipts | | - | - | - | |
| **Total Receipts** | | - | - | - | |
| | | | | | |
| **Disbursements** | | | | | |
| A/P Disbursements | | 393 | 244 | 149 | Timing |
| Critical Vendor Payments | | - | - | - | |
| COD Payments | | - | - | - | |
| Payroll | | 494 | 862 | (368) | PR tax quarterly true-up |
| Insurance | | 793 | 487 | 306 | Timing |
| CapEx | | - | - | - | |
| Professional Fees | | 2,521 | 2,117 | 404 | |
| Legal Fees, Claims, etc. | | - | - | - | |
| Hedging - loss/(gain) | | - | - | - | |
| Investments in JV Companies | | - | - | - | |
| Other Disbursements | | 470 | - | 470 | Timing |
| **Total Disbursements** | | 4,671 | 3,710 | 961 | |
| | | | | | |
| **Net Cash Flow** | | $ (4,671) | $ (3,710) | $  961 | |

Notes:

18 / 18

EaglePicher_DIP/July 22)_072705

7/27/2005

###